KC **F I L E D**

DEC 1 7 2007
DEC 17 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JERRY BROWN,<br>　　　Plaintiff,<br><br>v.<br><br>ILLINOIS WASTE MANAGEMENT AND<br>　RESEARCH CENTER, a division of the<br>ILLINOIS DEPT. OF NATURAL RESOURCES, a<br>department of the STATE OF ILLINOIS,<br>Timothy Lindsey, Katie Day and George Vander<br>Velde,<br>　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

07CV7080
JUDGE ZAGEL
MAGISTRATE JUDGE VALDEZ

JURY TRIAL DEMANDED

## COMPLAINT AT LAW

Now comes the Plaintiff, JERRY BROWN, Pro Se, 1520 Lee Boulevard, Berkeley, IL 60163, and hereby submits this complaint against the defendants, the ILLINOIS WASTE MANAGEMENT AND RESEARCH CENTER, a division of the ILLINOIS DEPARTMENT of NATURAL RESOURCES, a department of the STATE OF ILLINOIS, Timothy Lindsey, Katie Day and George Vander Velde.

### JURISDICTION AND VENUE

1. This is an action brought to remedy discrimination on the basis of race, ancestry and national origin in the terms, conditions and privileges of employment and to remedy injuries suffered by the Plaintiff pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000 et seq., as amended by the Civil Rights Act of 1991 ("Title VII").

2. Injunctive and declaratory relief, damages and other appropriate legal and equitable relief are sought pursuant to 42 U.S.C. 2000e(f), (g) and (k) et seq.

3. Plaintiff, Jerry Brown, a Black engineer employed with the Illinois Waste Management and Research Center (WMRC) whose national origin is African-American, filed a Charge of Discrimination against WMRC with the Equal Employment Opportunity Commission (EEOC) and the Illinois Department of Human Rights (IDHR) on or about July 6, 2007, (Charge



EXHIBIT
A
Mot/Dism. 07-7080

No. 440-2007-06205) complaining of the acts of discrimination alleged herein.  [Charge of Discrimination is Attached hereto as Appendix A].

4. On or about September 21, 2007, the EEOC issued a Dismissal and Notice of Rights Letter allowing the Plaintiff to sue the Defendants in federal court.  [Dismissal and Notice of Rights Letter is Attached hereto as Appendix B].

5. Plaintiff Jerry Brown has complied fully with all the prerequisites to jurisdiction in the Court under Title VII.  The court has original federal question jurisdiction pursuant to 28 U.S.C. 1331 and 1343.

6. As the unlawful employment practices complained of herein occurred within the Northern District of Illinois, venue is proper in this District.

## PARTIES

7. Plaintiff Jerry Brown is an Assistant Professional Scientist with WMRC, a position he has held since being hired by WMRC in November 1994.

8. Defendants are WMRC, a division within the Illinois Department of Natural Resources (IDNR), a department of the State of Illinois, and Timothy Lindsey, Katie Day and George Vander Velde, employees of WMRC.  All actions alleged in this complaint which were taken by any persons, agents, or employees of the State of Illinois took place within the scope of their authority given them by the State of Illinois and pursuant to those agents' and employees' official capacities and responsibilities.

9. Defendant State of Illinois is an "employer" within the meaning of Title VII, its actions are governed by Title VII, and it employs more than 500 employees in each of 20 or more calendar weeks in the current or preceding year.  42 U.S.C.  2000e(b) and 1981a(b)(3).

## STATEMENT OF CLAIM

10. Plaintiff has been employed by WMRC, a division of IDNR, a department of the State of Illinois since November 1994.  Plaintiff's initial salary was already significantly below market salaries for Plaintiff's qualifications and also significantly below the salaries of similarly educated and experienced engineers working at WMRC.  During the time Plaintiff has worked

- 2 -

for WMRC, Plaintiff's salary has risen less than the rate of inflation, according to Plaintiff's calculations. Other professional employees (non-Black) with WMRC have received significant salary increases through the promotion process and through regular annual salary increases. Plaintiff is the only professional engineer that has been treated differently. Plaintiff is a Black male.

11. Plaintiff works in the Pollution Prevention (P2) Group of WMRC. The P2 Group's Manager is Dr. Timothy Lindsey. At the time of the events of this complaint, Plaintiff's supervisor was Dr. Lindsey.

12. WMRC's refusal to pay Plaintiff on par with non-Black staff members led Plaintiff to file internal grievances and complaints at law against WMRC. Despite satisfactorily completing work assignments, Plaintiff's supervisor has downgraded Plaintiff's performance based on unfounded, speculative reasoning and untrue statements. When Plaintiff challenged the evaluation and refuted it with facts, Plaintiff's supervisor refused to reply, saying that the matter was closed and leaving the unfounded and inaccurate statements in Plaintiff's file.

13. Plaintiff filed a grievance with WMRC upper management. A review of the matter by WMRC upper management found no "unjust or injurious interpretation or appplication of any policy, procedure or rule" on the part of WMRC management.

## FIRST CAUSE OF ACTION

14. Plaintiff incorporates the allegations of paragraphs 1 through 13 above and, in addition, states that Defendants' conduct in repeatedly downgrading Plaintiff's performance evaluation and in repeatedly failing to pay Plaintiff in line with other non-Black employees with similar education, experience and demonstrated skill level constitutes willful and illegal discrimination on account of Plaintiff's race, national ancestry and origin in violation of Title VII, 42 U.S.C. 2000(e) et seq.

## SECOND CAUSE OF ACTION

15. Plaintiff incorporates the allegations of paragraphs 1 through 14 above and, in addition, states that Defendants' conduct constitutes willful and illegal discrimination on account

- 3 -

of and in retaliation for Plaintiff filing previous complaints of race, national origin, and national ancestry discrimination in violation of Title VII, 42 U.S.C. 2000(e) et seq.

WHEREFORE Plaintiff JERRY BROWN respectfully requests and prays that this Court enter judgment in favor of the Plaintiff and against Defendants for the following relief:

1. that the court find and declare that the Defendants engaged in race, national ancestry, and national origin discrimination against the Plaintiff in denying Plaintiff equal pay consistent with that of non-Blacks of similar education, experience and job accomplishments;

2. that the court find and declare that the Defendants engaged in wrongful and illegal retaliation against the Plaintiff for exercising his lawful right to complain of discrimination against the Defendants by filing charges of race, national origin and national ancestry discrimination with the IDHR and EEOC and by filing a Complaints At Law against the Defendants with the U.S. District Court;

3. that the court order the Defendants to pay the Plaintiff in accordance to the pay scale afforded to non-Black employees, a salary that he would have been paid had he not been the victim of race, national origin and national ancestry discrimination;

4. that the court order full back pay at the rate of compensation Plaintiff would have achieved had he not been the victim of wrongful discrimination on account of his race, national origin and national ancestry, plus interest;

5. that the court order full and complete compensatory damages for the violation of the Plaintiff's rights to be free from race, national origin and national ancestry discrimination including monetary damages for pain, suffering, humiliation, damage to Plaintiff's reputation, and loss of economic advantages and opportunities he would have gained if he had not been discriminated against;

6. that the court order WMRC to make its promotion process and salary process clear to all its employees and that WMRC post notices for all open positions within its organization;

7.   that the court order WMRC to actively seek to hire more minority employees and that WMRC pay its minority staff at levels consistent with its non-minority employees for similar experience levels, education levels, responsibilities, job functions and job performance;

8.   that the court award attorneys fees and costs in prosecuting and pursuing relief for the unlawful discrimination alleged herein;

9.   that the court award any other relief which is equitable and just.

Respectfully submitted,

Jerry C. Brown
Pro Se

1520 Lee Boulevard
Berkeley, IL  60163
(708) 544-2994

- 5 -

EEOC Form 5 (5/01)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 440-2007-06205 |

| Illinois Department Of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Jerry C. Brown | (708) 544-2994 | 02-16-1953 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1520 Lee Blvd., Berkeley, IL 60163 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| IL WASTE MANAGEMENT & RESEARCH | 500 or More | (630) 472-5016 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1010 Jorie Blvd. Suite 12, Oak Brook, IL 60523 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER (Specify below.)

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 10-06-2006 | 07-06-2007 |

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I began my employment with Respondent in or around November 1994, and my current position is Manufacturing Process Engineer. I engaged in protected activity. As a result, I have been subjected to different terms and conditions of employment.

I believe I have been discriminated against because of my race, Black, and in retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

RECEIVED EEOC

JUL 06 2007

CHICAGO DISTRICT OFC

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| Jul 06, 2007          Jerry C Brown | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date          Charging Party Signature | |

*APPENDIX A*

EEOC Form 181 (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To: Jerry C. Brown<br>1520 Lee Blvd.<br>Berkeley, IL 60163<br><br>CERTIFIED MAIL 7099 3400 0018 8818 6497 | From: Chicago District Office<br>500 West Madison St<br>Suite 2800<br>Chicago, IL 60661 |

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2007-06205 | Emily McFarlin,<br>Investigator | (312) 353-7312 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

☐ While reasonable efforts were made to locate you, we were not able to do so.

☐ You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt **of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_signature_

Enclosures(s)

John P. Rowe,
District Director

9/21/07
(Date Mailed)

cc:    IL WASTE MANAGEMENT & RESEARCH

## APPENDIX B

Westlaw.

499 F.3d 675                                                                                        Page 1
499 F.3d 675, 101 Fair Empl.Prac.Cas. (BNA) 693, 90 Empl. Prac. Dec. P 42,935
**(Cite as: 499 F.3d 675)**

CBrown v. Illinois Dept. of NaturalResources
C.A.7 (Ill.),2007.

United States Court of Appeals,Seventh Circuit.
JerryBROWN, Plaintiff-Appellant,
v.
ILLINOIS DEPARTMENT OF
NATURALRESOURCES, Defendant-Appellee.
No. 06-1552.

Argued June 5, 2007.
Decided Aug. 27, 2007.

**Background:** Black employee sued employer alleging that employer violated Title VII by discriminating against him because of his race by declining to promote him to a higher payroll level, and retaliating against him for filing a discrimination complaint. The United States District Court for the Northern District of Illinois, John A. Nordberg, J., granted employer's motion for summary judgment, and appeal was taken.

**Holdings:** The Court of Appeals, Manion, Circuit Judge, held that:
(1) employee was time-barred from filing suit under Title VII for any "discrete act" about which he did not file an Equal Employment Opportunity Commission (EEOC) charge within the 300-day EEOC charging deadline;
(2) employee was not similarly situated to four white employees, as required to establish a prima facie showing of race discrimination for failure to promote;
(3) employee's problematic behavior and work performance proffered by employer as reasons failing to promote employee were not pretext for race discrimination in violation of Title VII; and
(4) temporal proximity between employee's filing of a discrimination complaint and his negative performance reviews were insufficient to establish that employer retaliated against employee for the discrimination complaint.

Affirmed.

West Headnotes

**[1] Civil Rights 78 ☞1505(3)**

78 Civil Rights
    78IV Remedies Under Federal Employment Discrimination Statutes
        78k1503 Administrative Agencies and Proceedings
            78k1505 Time for Proceedings; Limitations
                78k1505(3) k. Operation; Accrual and Computation. Most Cited Cases
African-American employee was time-barred from filing suit under Title VII for any "discrete act" about which he did not file an Equal Employment Opportunity Commission (EEOC) charge within the 300-day EEOC charging deadline. Civil Rights Act of 1964, § 706(e)(1), (f)(1), 42 U.S.C.A. § 2000e-5(e)(1), (f)(1).

**[2] Civil Rights 78 ☞1137**

78 Civil Rights
    78II Employment Practices
        78k1137 k. Motive or Intent; Pretext. Most Cited Cases

**Civil Rights 78 ☞1536**

78 Civil Rights
    78IV Remedies Under Federal Employment Discrimination Statutes
        78k1534 Presumptions, Inferences, and Burden of Proof
            78k1536 k. Effect of Prima Facie Case; Shifting Burden. Most Cited Cases
An employee can support a Title VII claim for failure to promote in one of two ways, either by directly showing that racial discrimination motivated the employment decision, or, as is more common, by relying on the indirect, burden-shifting method. Civil Rights Act of 1964, § 701, 42 U.S.C.A. § 2000e.

**[3] Civil Rights 78 ☞1536**

78 Civil Rights
    78IV Remedies Under Federal Employment Discrimination Statutes

EXHIBIT
B
Mot/Dism. 07-7080

© 2008                                            b Orig. U.S. Govt. Works.

499 F.3d 675                                                                    Page 2
499 F.3d 675, 101 Fair Empl.Prac.Cas. (BNA) 693, 90 Empl. Prac. Dec. P 42,935
(Cite as: 499 F.3d 675)

78k1534 Presumptions, Inferences, and Burden of Proof
78k1536 k. Effect of Prima Facie Case; Shifting Burden. Most Cited Cases
Under the indirect method, an employee bears the initial burden of establishing a prima facie case of race discrimination under Title VII by showing that: (1) he is a member of a protected group; (2) he was qualified for the position sought; (3) he was rejected for the position; and (4) the employee who was promoted was a member of a different race and was not better qualified than he. Civil Rights Act of 1964, § 701, 42 U.S.C.A. § 2000e.

[4] Civil Rights 78 ☞1135

78 Civil Rights
78II Employment Practices
78k1135 k. Promotion, Demotion, and Transfer. Most Cited Cases
African-American employee was not similarly situated to four white employees, as required to establish a prima facie showing of race discrimination for failure to promote under Title VII; two of the employees who were promoted did not share the plaintiff employee's negative performance evaluations and client complaints, a third employee who was also promoted did not have the negative work performance evaluations and she was promoted to a different, position that the one employee sought, and fourth employee had far greater experience than plaintiff employee. Civil Rights Act of 1964, § 701, 42 U.S.C.A. § 2000e.

[5] Civil Rights 78 ☞1137

78 Civil Rights
78II Employment Practices
78k1137 k. Motive or Intent; Pretext. Most Cited Cases
Employee's problematic behavior and work performance proffered by employer as reasons failing to promote employee were not pretext for race discrimination in violation of Title VII. Civil Rights Act of 1964, § 701, 42 U.S.C.A. § 2000e.

[6] Civil Rights 78 ☞1246

78 Civil Rights
78II Employment Practices

78k1241 Retaliation for Exercise of Rights
78k1246 k. Particular Cases. Most Cited Cases
Temporal proximity between African-American employee's filing of a discrimination complaint and his negative performance reviews, which resulted in him being placed on probation and denied promotion, was insufficient to establish that employer retaliated against employee for the discrimination complaint, as required for retaliation claim under Title VII; while employee's performance evaluations were more negative following the filing of his complaint, the employee had received negative reviews and client complaints prior to his first discrimination complaint. Civil Rights Act of 1964, § 704(a), 42 U.S.C.A. § 2000e-3(a).

*676Jonathan C. Goldman (argued), Chicago, IL, for Plaintiff-Appellant.
Brett E. Legner (argued), Office of the Attorney General, Evelyn R. Pacino, Maisel & Associates, Chicago, IL, for Defendant-Appellee.

Before EASTERBROOK, Chief Judge, and MANION and WOOD, Circuit Judges.

MANION, Circuit Judge.
Jerry Brown sued the Illinois Department of Natural Resources, alleging that it violated Title VII by discriminating against him because of his race by declining to promote him to a higher payroll level, and retaliating against him for filing a discrimination complaint. The district court granted summary judgment in favor of the Department. Brown appeals, and we affirm.

*677 I.

Jerry Brown, who is black, is employed by the Illinois Waste Management and Research Center (the "WMRC") in its Oak Brook, Illinois, office. The WMRC is one of four subsections that comprise the Office of Scientific Research and Analysis, which is a division of the Illinois Department of Natural Resources (the "Department"). The WMRC originally hired Brown in November 1994 as a Manufacturing Process Engineer at the assistant professional scientist payroll level. Malcolm Boyle interviewed Brown on behalf of the WMRC, and he recommended that the WMRC hire Brown. Brown's education includes a bachelor of science degree in

499 F.3d 675                                                                                              Page 3
499 F.3d 675, 101 Fair Empl.Prac.Cas. (BNA) 693, 90 Empl. Prac. Dec. P 42,935
**(Cite as: 499 F.3d 675)**

chemical engineering from the University of Illinois and a master's degree in business administration from the University of Chicago. Brown accepted the WMRC's employment offer.

The WMRC is governed by an eight-member, governor-appointed Board of Natural Resources and Conservation (the "Board"), which is chaired by the director of the Department. The Board has a policy for promotion to higher payroll levels that states that promotion "will be based upon performance from visible and demonstrable evidence that the individual has attained, and/or has the potential to attain, competence and qualifications to function at the promotion level." The Board allows each of the subsections, including the WMRC, to determine specific guidelines for promotion and procedures for assessment. Prior to 2002, the WMRC's policy manual provided that to be eligible for promotion, an employee must successfully complete a probationary review period and receive above-average performance evaluations during the performance review period, with a minimum of one year of experience at the WMRC. Beginning in 2002, the WMRC changed its policy manual to state that the above-average performance evaluations should be attained "preferably for two to three consecutive years," and that the employee should meet the education, years of experience, and time-in-grade requirements of the WMRC's promotion-track system. The WMRC's policy manual further provides that in order for a promotion to occur, there must be an available position, a supervisor must recommend an employee for promotion, and the promotion must be approved by the WMRC's director, the Department's director, and the Board. Under the WMRC's promotion guidelines, an employee's educational degree determines the length of time the employee needs to serve in a particular payroll level before being eligible for promotion. For instance, under the WMRC's guidelines, to be eligible for promotion from the assistant professional scientist payroll level to the associate professional scientist payroll level, an employee with a bachelor's degree should have five years time-in-grade, while an employee with a master's degree should have four years time-in-grade. The WMRC's manager of human resources testified, however, that the WMRC's promotion guidelines do not prohibit a supervisor from nominating an employee who does not satisfy the time-in-grade criteria.

Brown's tenure with the WMRC was marked by mixed performance reviews and criticism of the way in which he interacted with coworkers and clients. Boyle, who was Brown's supervisor from May 1995 until April 2000, prepared Brown's performance evaluations during that period. Brown's May 1995 performance evaluation stated that Brown's performance was "good" overall, but Brown needed to organize his work more efficiently, keep his supervisor informed about his projects, and ask for help and assistance when needed. Boyle's April 1997 performance evaluation of Brown stated that Brown had a good attitude generally, but that he was "somewhat argumentative," needed to **\*678** work on punctuality, and needed to better organize his workload. Brown's April 1998 performance evaluation described him as "defensive" and "insensitive and abrasive when dealing with other WMRC staff." That evaluation also noted that while Brown was the leading revenue generator for his office, he continued to have problems arriving to work on time and meeting deadlines, although his tardiness had improved.[FN1] In September 1998, Brown became eligible for promotion from the assistant professional scientist payroll level to the associate professional scientist payroll level. Boyle testified that he did not recommend Brown for promotion because he believed that Brown's poor work performance, including his tardiness, argumentative behavior, and late submission of reports and assignments, did not justify his promotion.

> FN1. While Brown regularly arrived late for work, he did work late on the days that he did not arrive on time.

In his April 1999 performance evaluation of Brown, Boyle stated that, despite Brown's efforts to the contrary, he still had conflicts with coworkers, clients and partners, that he had difficulty with his communication skills, and that he required more supervision than his position warranted. In his written comments and responses to that evaluation, Brown stated that he believed he worked well with his coworkers and clients, and that he had good communication skills. The WMRC's clients who worked with Brown also complained about his work performance. One specific complaint occurred in July 1999, when the WMRC received an e-mail from

499 F.3d 675                                                                                                        Page 4
499 F.3d 675, 101 Fair Empl.Prac.Cas. (BNA) 693, 90 Empl. Prac. Dec. P 42,935
**(Cite as: 499 F.3d 675)**

Warren Buchanan of Chicago Manufacturing Center expressing frustration over Brown's refusal to provide project updates. The e-mail also requested that the WMRC refrain from assigning Brown to future Chicago Manufacturing Center projects. While Brown contended that it was Buchanan who failed to update his own employees about the project, four other Chicago Manufacturing Center employees complained to the WMRC about Brown's work performance and about Brown's failure to keep them informed about projects. Despite Brown's eligibility, Boyle did not recommend him for promotion in 1999, again based on his continued performance deficiencies.

Brown filed an internal grievance against the WMRC in February 2000, alleging that Boyle and Timothy Lindsey, the manager of the Department's pollution prevention program, discriminated against him by not recommending him for promotion. One month later, the WMRC's director, George Vander Velde, responded to Brown's grievance by stating that the WMRC's investigation did not yield any evidence of discrimination. Brown's April 2000 evaluation, which Boyle conducted, contained more comments regarding his poor communication skills and argumentative behavior that hindered his work performance. In response, Brown submitted written comments and responses disputing that assessment. Three months later, in July 2000, William Kern of Saporito Plating informed Lindsey that Brown was not welcome at the Saporito plant because he questioned Brown's technical credibility and because Brown argued with him. Boyle again did not recommend Brown for promotion because he believed that Brown's performance issues had not improved.

Effective September 2000, the WMRC placed Brown on probation for receiving an "I" grade on his last evaluation, indicating that his performance need significant improvement.[FN2] At that same time, the **\*679** WMRC also placed two other employees on probation, both of whom are white males. Brown passed his probationary period in March 2001. One of the white employees, however, initially passed his probationary period, but the WMRC later terminated his employment for poor work performance. On October 24, 2000, after being placed on probation, Brown filed his first charge with the Equal Employment Opportunity Commission ("EEOC")

and the Illinois Department of Human Rights ("IDHR"), alleging race discrimination and retaliation.[FN3] Three months later, on January 30, 2001, Brown amended his EEOC and IDHR charge to include an allegation that the WMRC denied him a salary increase because of his probationary status.

> FN2. The WMRC had implemented its new probation system approximately six months earlier, which stated that employees who receive grades no higher than "I" on their performance evaluations were to be placed on probation. Boyle gave Brown an "I" grade on his April 2000 review, but Boyle testified that he was unaware that the "I" grade would trigger probation.

> FN3. In his October 24, 2000, EEOC charge, Brown falsely stated that "[d]uring my employment my performance was always rated as meeting or exceeding expectations," which is directly contradicted by Brown's April 2000 performance evaluation, as well as his performance evaluation for earlier years. He repeated the same false statement in his January 30, 2001, EEOC charge.

Beginning in April 2001, Lindsey performed Brown's performance evaluations. Brown's April 2001 performance evaluation noted that his communication skills were improving, but they still needed improvement, along with his punctuality and need for excessive supervision. It further stated that Brown needed to work on his attitude towards supervision and that "he questions assignments excessively and is argumentative when receiving direction." Two months later, in June 2001, the WMRC received another letter of complaint about Brown, this time from Stephen Rundell, the president of Solvent Systems International, Inc. Rundell's letter stated that Brown had taken an adversarial attitude toward him and that he was unhappy with the manner in which Brown handled the project at Solvent Systems, both in terms of performance and professional conduct. Also, two other clients, James Kiriases of Commonwealth Edison and Nora Saldevar of Lawndale Association, complained to the WMRC about Brown's work performance.

In addition to the complaint letters from clients,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Brown received five compliments from customers and management between 1997 and 2002. These included a 1997 letter from Scully Jones thanking Brown and others for a "job well done," and 1998 letter from Argonne National Lab thanking Brown for participating in an Earth Day forum. Additionally, in February 2000, Lindsey sent an e-mail to Brown stating that Brown had a good idea on a particular project, and in February 2002 Lindsey sent Brown an e-mail stating that a particular proposal looked good.

In October 2001, the EEOC issued to Brown a notice of right to sue authorizing him to bring suit in federal court under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. On January 17, 2002, Brown filed suit against Illinois, the Department, and the WMRC, as well as Boyle and Lindsey individually,[FN4] alleging race discrimination and retaliation. While Brown's lawsuit was pending, Raymond Ronda, the Oak Brook office's then-operations manager, performed Brown's April 2002 evaluation. Ronda stated that Brown *680 had begun arriving to work on time, and that while his communication skills were improving, he needed "to improve upon communication with his supervisor when tasks fall behind schedule." In July 2002, Brown filed another EEOC and IDHR charge, alleging race discrimination and retaliation in violation of Title VII based on the WMRC's September 2001 decision to promote Ronda, who is white, to operations manager instead of Brown. On August 9, 2002, the EEOC issued to Brown a notice of right to sue on his second charge, and Brown amended his complaint to include those allegations.

> FN4. In his second amended complaint, Brown withdrew his claims against the individual defendants, and Brown's appeal only named as defendants-appellees the State of Illinois and the Illinois Department of Natural Resources. At oral argument, however, counsel for Brown conceded that there had never been any basis for suing the State of Illinois. Accordingly, we removed the State of Illinois as a defendant-appellee in this appeal.

The defendants moved for summary judgment, and the district court granted their motion. Regarding Brown's race discrimination claim, the district court held that Brown failed to establish a prima facie case of discrimination because he did not identify any similarly situated individuals of a different race whom the WMRC treated more favorably. The district court also held that there was no evidence that the WMRC's failure to promote Brown was a pretext for race discrimination, because the WMRC's consistent explanation for its decision was supported by both the WMRC's evaluations of Brown's work performance and outside complaints corroborating the negative comments in those evaluations. The district court also rejected Brown's retaliation claim, finding that, in the absence of any additional direct evidence, a general temporal proximity between his discrimination complaints and the WMRC's decision not to recommend him for promotion was insufficient to create a genuine issue of material fact. The district court found it unnecessary to decide whether some of Brown's claims were time-barred for failing to file an EEOC charge within 300 days of the complained-of actions. Brown appeals.

II.

On appeal, Brown argues that the district court erred in granting summary judgment to the Department on his race discrimination and retaliation claims. We review a district court's grant of summary judgment de novo. Merillat v. Metal Spinners, Inc., 470 F.3d 685, 690 (7th Cir.2006) (citations omitted). In doing so, we construe all facts and reasonable inferences in the light most favorable to the non-moving party. Healy v. City of Chicago, 450 F.3d 732, 738 (7th Cir.2006) (citations omitted). "Summary judgment is proper if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " Id. (quoting Fed.R.Civ.P. 56(c)).

[1] As a threshold matter, in light of the Supreme Court's recent decision in Ledbetter v. Goodyear Tire & Rubber Co., --- U.S. ----, 127 S.Ct. 2162, 167 L.Ed.2d 982 (2007), which was issued after the district court entered summary judgment in this case, we must determine for which, if any, of his allegations Brown timely filed EEOC charges. Ledbetter, 127 S.Ct. at 2166-67 (stating that "if the employee does not submit a timely EEOC charge, the employee may not challenge that [unlawful employment] practice in court" (citing 42 U.S.C. §

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

499 F.3d 675                                                                                    Page 6
499 F.3d 675, 101 Fair Empl.Prac.Cas. (BNA) 693, 90 Empl. Prac. Dec. P 42,935
(Cite as: 499 F.3d 675)

2000e-5(f)(1))). In *Ledbetter,* the Court held that each "discrete act" of discrimination, such as a "failure to promote," constitutes a separate, actionable unlawful employment practice, which requires the employee to file a timely EEOC charge. *Id.* at 2169 ("The EEOC charging period is triggered when a discrete unlawful practice takes place."); *see also Roney v. Ill. Dep't of Transp.,* 474 F.3d 455, 460 (7th Cir.2007) (stating that an "unlawful employment practice includes various discrete \*681 acts such as ... failure to promote" (quotations and citations omitted)). The Court thus rejected the so-called "serial" or "series" violation approach, stating that "if an employer engages in a series of acts each of which is intentionally discriminatory, then a fresh violation takes place *when each act* is committed." *Ledbetter,* 127 S.Ct. at 2169 (emphasis added). Accordingly, Brown is time-barred from filing suit under Title VII for any "discrete act" about which he did not file an EEOC charge within the 300-day EEOC charging deadline.[FN5]*Id.* at 2170-72 (citing 42 U.S.C. §§ 2000e-5(e)(1), 2000e-5(f)(1)). Brown filed his first EEOC charge on October 24, 2000, and thus he is time-barred from filing suit based on any "discrete act" that occurred prior to December 29, 1999. Because Brown has failed to present any evidence that the WMRC's decisions not to promote him in 1998 and 1999 occurred on or after December 29, 1999,[FN6] his claims based on those "discrete acts" are time-barred.

> FN5. "Title VII has its own requirements as to what claimants must do before they can sue, but at least so far as the statutory text is concerned, those requirements are limited to (1) filing a charge with the Equal Employment Opportunity Commission within 180 days after the date of the complained-of employment action, in states that do not have an equal employment opportunity agency, and [as in this case] within 300 days in states like Illinois that do, in which event the complainant must file his complaint with that agency at least 60 days before filing with the EEOC, and (2) waiting to sue until receiving notification (the "right to sue" letter) from the Commission that the Commission does not intend to sue." *Doe v. Oberweis Dairy,* 456 F.3d 704, 708 (7th Cir.2006) (citing 42 U.S.C.A. §§ 2000e-5(c), (e), (f)(1)).

> FN6. The record indicates that the WMRC completed Brown's performance evaluations in April of 1998 and 1999, and the employees that the WMRC did promote in 1998 and 1999 were promoted in September of those years.

[2][3] Brown does, however, allege two claims of race discrimination that are not time-barred: (1) the WMRC's decision not to recommend him for promotion to the associate professional scientist payroll level in late 2000 after the WMRC placed Brown on probation; and (2) the WMRC's 2001 decision to promote Ronda rather than Brown to operations manager. An employee can support a Title VII claim for failure to promote in one of two ways, either by "directly show[ing] that racial discrimination motivated the employment decision, or, as is more common, [by] rely[ing] on the indirect, burden-shifting method set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Sublett v. John Wiley & Sons, Inc.,* 463 F.3d 731, 736-37 (7th Cir.2006) (quotations and citations omitted). Brown has not offered any evidence of direct racial discrimination, and thus he attempts to proceed under the burden-shifting method. Under the indirect method, the employee bears the initial burden of establishing a prima facie case of race discrimination by showing that: (1) he is a member of a protected group; (2) he was qualified for the position sought; (3) he was rejected for the position; and (4) the employee who was promoted was a member of a different race and was not better qualified than he. *Id.* at 737 (citing *Johnson v. Nordstrom, Inc.,* 260 F.3d 727, 732 (7th Cir.2001)). If the employee is able to clear that hurdle, then "the burden shifts to the [employer] to articulate a legitimate, nondiscriminatory reason for [its] action, 'which if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action.' " *Id.* (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (citations omitted)). If the employer articulates nondiscriminatory reasons for its actions, then the employee "resumes h[is] \*682 original burden of proof and must establish by a preponderance of the evidence that the [employer's] proffered reasons are pretextual." *Id.* (quoting *Perdomo v. Browner,* 67 F.3d 140, 144 (7th Cir.1995)).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

499 F.3d 675                                                                                                  Page 7
499 F.3d 675, 101 Fair Empl.Prac.Cas. (BNA) 693, 90 Empl. Prac. Dec. P 42,935
(Cite as: 499 F.3d 675)

[4] In this case, Brown did not carry his burden of making a prima facie showing for either of his actionable race discrimination claims against the Department, because none of the four white WMRC employees that he identifies was similarly situated to him. *See Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 979 (7th Cir.2004) ("To be similarly situated to another employee, [the plaintiff] must show that the employee is directly comparable in all material respects."). For example, the first individual that Brown cites is Clifford Jahp, a white WMRC employee whom the WMRC promoted from the assistant professional scientist payroll level to the associate professional scientist payroll level in September 1998. While both Jahp and Brown shared the same supervisor during that time, Jahp did not share Brown's negative performance evaluations and client complaints. *Jordan v. City of Gary*, 396 F.3d 825, 834 (7th Cir.2005) (stating that the plaintiff "must demonstrate that [a coworker] occupied the same job level and engaged in similar past misconduct, but as a result of his misconduct he (unlike [the plaintiff] ) was treated differently (i.e., more favorably) for no legitimate reason" (citing *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939-40 (7th Cir.2003))). Brown argues in response that the WMRC violated its promotion guidelines by recommending Jahp for promotion, because Jahp was one year short of the time-in-grade guidelines. His argument is unavailing because Boyle testified that he was unaware that Jahp did not meet the time-in-grade guidelines when he made his promotion recommendation and the WMRC's manager of human relations testified that nothing in the WMRC's promotion guidelines prohibits a supervisor from recommending an early promotion. Accordingly, Jahp was not similarly situated to Brown for purposes of his actionable claims against the Department.

The next individual that Brown cites is Deborah Jacobson. On Boyle's recommendation, the WMRC promoted Jacobson, who is white, from the assistant support scientist payroll grade to the assistant professional scientist payroll grade in September 1998. While Brown may be correct that Jacobson's time-in-grade did not comply with the WMRC's promotion guidelines, he again glosses over the fact that the WMRC never received complaints about Jacobson's work performance. Jacobson also was promoted to a different, and lower-level, position

than the one that Brown sought. *See id.*(stating that to be similarly situated the plaintiff and the other employee must have occupied the same job level). Accordingly, Jacobson was not similarly situated to Brown for purposes of his actionable claims against the Department.

Brown also contends that Kenneth Barnes was similarly situated to him. On Lindsey's recommendation, the WMRC promoted Barnes, who is white, from the assistant professional scientist payroll level to the associate professional scientist payroll level in September 2002. Like the other proposed comparisons, and unlike Brown, Barnes was not placed on probation as a result of unsatisfactory performance evaluations, and he never received complaints from the WMRC's clients. The record, and Lindsey's testimony, indicates that Lindsey promoted Barnes because of his performance and professionalism. Accordingly, Barnes was not similarly situated to Brown for purposes of his actionable claims against the Department.

Finally, Brown points to Raymond Ronda as similarly situated to him. In September 2001, during the time that Brown *683 was on probation for his unsatisfactory performance evaluation, the WMRC promoted Ronda, who is white, to the associate professional scientist payroll level when it appointed him operations manager of the Oak Brook office, a position that Brown apparently was seeking.[FN7] While Brown correctly notes that Ronda had not met the WMRC's promotion policy's time-in-grade guidelines, the Department points out that prior to joining the WMRC, Ronda had accumulated thirty-four years of experience with the Matsushita Microwave Oven Company, including twenty-five years of supervisory experience. Additionally, during his tenure there, Ronda served as its director of engineering, its director of operations, and its general manager of development engineering. In short, at the time that the WMRC made its promotion decision, Ronda had far greater experience, particularly, supervisory experience, than Brown. *See Fisher v. Wayne Dalton Corp.*, 139 F.3d 1137, 1141-42 (7th Cir.1998) (finding discrimination did not occur where an employee with more seniority was passed over for a position because the less senior employee had superior qualifications for the position). Further, unlike Brown, Ronda had not received negative performance evaluations or client complaints, and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

had not been placed on probation. *Jordan*, 396 F.3d at 834 (finding that the plaintiff and a coworker were not similarly situated because "[t]he record establishes that [the plaintiff] had an extensive track record of repeated and ongoing disciplinary problems prior to [the employer's] decision to appoint [the coworker] as supervisor, while [the coworker] did not"). Accordingly, Ronda was not similarly situated to Brown for purposes of the WMRC's September 2001 promotion decision. Brown, therefore, failed to make a prima facie showing that the WMRC's decisions not to promote him were based on race discrimination.

> FN7. The operations manager position was open because Boyle transferred to a different position after another, higher-level employee left his employment with the WMRC.

Even if Brown could establish a prima facie case, the Department still is entitled to summary judgment because it presented a compelling nondiscriminatory explanation for the WMRC's decision not to promote Brown: his unsatisfactory performance evaluations and client complaints regarding his performance. Brown has not provided any evidence to show that the Department's proffered, nondiscriminatory reason was pretextual. *See Sublett*, 463 F.3d at 737 (stating that "[p]retext is a lie, specifically a phony reason for some action"). "To show pretext, 'a plaintiff must show that [ (1) ] the employer's nondiscriminatory reason was dishonest; and [ (2) ] the employer's true reason was based on a discriminatory intent.' " *Perez v. Illinois*, 488 F.3d 773, 777 (7th Cir.2007) (quoting *EEOC v. Target Corp.*, 460 F.3d 946, 960 (7th Cir.2006) (citations omitted)). If the plaintiff cannot offer any direct evidence of pretext, then the plaintiff must prove pretext indirectly. *Id.* (citations omitted). "With indirect evidence, the plaintiff must show that the employer's reason is not credible or that the reason is factually baseless." *Id.* at 777-78 (citations omitted). " '[The plaintiff] must also provide evidence of at least an inference that the real reason for [the adverse employment action] was discriminatory.' " *Id.* (quoting *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 983 (7th Cir.1999) (citations omitted)).

[5] In this case, the record evinces that both Brown's coworkers at the WMRC and those clients with whom he worked regarded his behavior and work performance as problematic. Two different supervisors documented these problems in performance**684 evaluations and disgruntled clients echoed these issues in multiple complaint letters to the WMRC regarding Brown, including one that went as far as stating that Brown was not welcome at the client's facility. While Brown attempted to rebut his negative performance review by offering his own, more positive self-assessments, and he attempted to explain away the negative client letters, we have frequently stated " 'that a plaintiff's own opinions about [his] work performance or qualifications do not sufficiently cast doubt on the legitimacy of [his] employer's proffered reasons for its employment actions.' " *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1181 (7th Cir.2002) (quoting *Ost v. W. Suburban Travelers Limousine, Inc.*, 88 F.3d 435, 441 (7th Cir.1996)). Accordingly, the district court properly entered summary judgment for the Department on Brown's race discrimination claim.

[6] Brown also argues that the district court should not have granted summary judgment for the Department on his claim that the WMRC retaliated against him when he complained about the WMRC's alleged unlawful discriminatory actions by placing him on probation, issuing negative performance reviews for him, and continuing to deny him a promotion to the associate professional scientist payroll level. Because Brown filed his first discrimination complaint after December 29, 1999, his retaliation claim is not time-barred. Under the anti-retaliation provision of Title VII, it is unlawful for an employer to "discriminate against" an employee "because he has opposed any practice made an unlawful employment practice" by the statute or "because he has made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing." *Roney*, 474 F.3d at 459 (quoting 42 U.S.C. § 2000e-3(a)). "A plaintiff may prove retaliation by using either the direct method or the indirect, burden-shifting method." *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 662 (7th Cir.2006) (quotations and citations omitted). "Under the direct method, a plaintiff must show that (1) he engaged in statutorily protected activity; (2) he suffered an adverse action taken by the employer; and (3) there was a causal connection between the two." *Id.* at 663 (quotations and citations omitted). Alternatively, under the indirect approach, in order to establish a prima facie case for retaliation the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

employee "must show the following: (1) after filing a charge [the employee] was subject to adverse employment action; (2) at the time, [the employee] was performing his job satisfactorily; and (3) no similarly situated employees who did not file a charge were subjected to an adverse employment action."*Hudson v. Chicago Transit Auth., 375 F.3d 552, 560 (7th Cir.2004).* " 'If the plaintiff establishes a prima facie case, the burden of production shifts to the employer to present evidence of a non-discriminatory reason for its employment action.' " *Tomanovich,* 457 F.3d at 663 (quoting *Adusumilli v. City of Chicago,* 164 F.3d 353, 362 (7th Cir.1998)). Then, if the employer presents evidence of a non-discriminatory reason for its employment action, " 'the burden shifts back to the plaintiff to demonstrate that the employer's reason is pre-textual.' " *Id.* (quoting *Moser v. Ind. Dep't of Corr.,* 406 F.3d 895, 903 (7th Cir.2005)). "Under the indirect method of proof, failure to satisfy any one element of the prima facie case is fatal to an employee's retaliation claim." *Sublett,* 463 F.3d at 740 (quoting *Hudson,* 375 F.3d at 560). Brown only asserts on appeal that he presented sufficient evidence to avoid summary judgment under the direct method.

In this case, Brown argues that the timing of his February 2000 filing of a discrimination complaint and the WMRC's subsequent, increasingly negative performance reviews, which resulted in him being placed on probation and denied promotion,*685 are direct evidence of retaliation. Brown does not contend, however, that the WMRC admitted a retaliatory motive for its actions. Regarding his negative performance reviews, Brown asserts that he received a particularly harsh performance review in April 2000 after he complained of discrimination two months earlier. He thus asserts that the temporal proximity between his complaint and his negative review evince the WMRC's retaliatory intent. However, as we have stated on many occasions, "timing alone is insufficient to establish a genuine issue of material fact to support a retaliation claim." *Kampmier v. Emeritus Corp.,* 472 F.3d 930, 939 (7th Cir.2007). *See also Wyninger,* 361 F.3d at 981 ("[I]t is clear that mere temporal proximity is not enough to establish a genuine issue of material fact."). While it may be true that Brown's performance evaluations were more negative beginning in 2000, the record reflects that Brown had received negative reviews and client complaints prior to his first discrimination complaint. Brown's argument that the WMRC placed

him on probation because of his discrimination claim also is unavailing because the WMRC instituted its probation policy prior to Brown's first discrimination complaint, and Boyle testified that he was unaware that giving Brown an unsatisfactory, or "I," grade on his April 2000 review would result in probation. Further, Boyle personally raised similar issues regarding Brown's work on the performance evaluations that he submitted prior to Brown's discrimination complaint, and he had previously recommended that Brown not be promoted both in 1998 and 1999. Brown also does not offer evidence or even assert that his work performance improved significantly between 1999 and 2000, such that it would render invalid Boyle's earlier negative performance evaluations and rationale for declining to recommend Brown for a promotion. The multiple client complaint letters corroborate this view, and are in accord with the negative comments on Brown's April 2000 performance evaluation (performed by Boyle) and his April 2001 performance evaluation (performed by Lindsey). In sum, Brown does not offer any evidence of retaliation beyond the mere temporal proximity between his discrimination complaint and his continued string of negative performance reviews, the resulting term of probation, and the WMRC's consistent decisions not to promote him. Accordingly, Brown failed to show any direct evidence that the WMRC retaliated against him based on his discrimination complaints, and the district court properly entered summary judgment for the Department.

III.

Based on the Supreme Court's decision in *Ledbetter,* all of Brown's Title VII claims that were based on "discrete acts" that occurred over 300 days prior to his first EEOC charge are time-barred. For his non-time-barred Title VII claims, Brown failed to make a prima facie showing that the WMRC unlawfully discriminated against him by refusing to promote him based on his race because he did not present any evidence of similarly situated employees of a different race whom the WMRC promoted and who were not better qualified than Brown. He also failed to offer any direct evidence that the WMRC retaliated against him for filing a discrimination complaint, because evidence of temporal proximity alone is insufficient to raise an issue of material fact to support a retaliation claim. Accordingly, the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

499 F.3d 675
499 F.3d 675, 101 Fair Empl.Prac.Cas. (BNA) 693, 90 Empl. Prac. Dec. P 42,935
**(Cite as: 499 F.3d 675)**

district court's grant of summary judgment to the
Department is AFFIRMED.

C.A.7 (Ill.),2007.
Brown v. Illinois Dept. of Natural Resources
499 F.3d 675, 101 Fair Empl.Prac.Cas. (BNA) 693,
90 Empl. Prac. Dec. P 42,935

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**FILED** *LAL*

APR 2 5 2005

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

JERRY BROWN )
_____ )
(Name of the plaintiff or plaintiffs) )
)
v. )
)
_Illinois Waste Management & Research_ )
_Center, a division of IL Dept of_ )
_Natural Resources, a dept of State of IL_ )
(Name of the defendant or defendants) )

**05C 2460**

ACTION
NO._____

**JUDGE SHADUR**

**MAGISTRATE JUDGE NOLAN**

## COMPLAINT OF EMPLOYMENT DISCRIMINATION

1. This is an action for employment discrimination.

2. The plaintiff is ___Jerry C Brown___ of the

county of ___Cook___ in the state of ___Illinois___.

3. The defendant is _Illinois Waste Management & Research Center_, whose

street address is ___One Hazelwood Drive___,

(city) _Champaign_ (county) _Champaign_ (state) _IL_ (ZIP) _61820_

(Defendant's telephone number) ___(217) – 333-8940___

4. The plaintiff sought employment or was employed by the defendant at (street address)

___Suite 12  1010 Jorie Blvd___ (city) _Oak Brook_

(county) _DuPage_ (state) _IL_ (ZIP code) _60523_

5. The plaintiff [*check one box*]

   (a) ☐   was denied employment by the defendant.

   (b) ☒   was hired and is still employed by the defendant.

   (c) ☐   was employed but is no longer employed by the defendant.



**EXHIBIT**

**C**

Mot/Dism. 07-7080

6. The defendant discriminated against the plaintiff on or about, or beginning on or about, (month) _September_ , (day)_____ , (year) _1998_ .

7.1 _**(Choose paragraph 7.1 or 7.2, do not complete both.)**_

      (a) The defendant is not a federal governmental agency, and the plaintiff [*check one box*] ☐ *has not* ☒ *has* filed a charge or charges against the defendant asserting the acts of discrimination indicated in this complaint with any of the following government agencies:

    (i)   ☒ the United States Equal Employment Opportunity Commission, on or about (month) _October_ (day) _15_ (year) _2004_ .

    (ii)  ☒ the Illinois Department of Human Rights, on or about (month) _October_ (day) _15_ (year) _2004_ .

  (b) If charges *were* filed with an agency indicated above, a copy of the charge is attached. ☒ YES. ☐ NO, **but plaintiff will file a copy of the charge within 14 days.** It is the policy of both the Equal Employment Opportunity Commission and the Illinois Department of Human Rights to cross-file with the other agency all charges received. The plaintiff has no reason to believe that this policy was not followed in this case.

7.2    The defendant is a federal governmental agency, and

    (a) the plaintiff previously filed a Complaint of Employment Discrimination with the defendant asserting the acts of discrimination indicated in this court complaint.

        ☐   Yes (month)_____ (day)_____ (year)_____

        ☐   No, did not file Complaint of Employment Discrimination

    2.    The plaintiff received a Final Agency Decision on (month)_____ (day)_____ (year)_____ .

    c.    Attached is a copy of the

      a.  Complaint of Employment Discrimination,

        ☐ YES    ☐ NO, but a copy will be filed within 14 days.

      (ii) Final Agency Decision

        ☐ YES    ☐ NO, but a copy will be filed within 14 days.

8.   *(Complete paragraph 8 only if defendant is not a federal governmental agency.)*

(a) ☐ the United States Equal Employment Opportunity Commission has not issued a

*Notice of Right to Sue.*

(b) ☒ the United States Equal Employment Opportunity Commission has issued a *Notice*

*of Right to Sue*, which was received by the plaintiff on (month) _January_

(day) _28_ (year) _2005_ a copy of which *Notice* is attached to this

complaint.

9.   The defendant discriminated against the plaintiff because of the plaintiff's [*check only those*

*that apply*]:

(a) ☐ Age (Age Discrimination Employment Act).

(b) ☒ Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(c) ☐ Disability (Americans with Disabilities Act or Rehabilitation Act)

(d) ☒ National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(e) ☒ Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(f) ☐ Religion (Title VII of the Civil Rights Act of 1964)

(g) ☐ Sex (Title VII of the Civil Rights Act of 1964)

10.  If the defendant is a state, county, municipal (city, town or village) or other local

governmental agency, plaintiff further alleges discrimination on the basis of race, color, or

national origin (42 U.S.C. § 1983).

11.  Jurisdiction over the statutory violation alleged is conferred as follows: for Title VII claims

by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); for 42 U.S.C.§1981

and §1983 by 42 U.S.C.§1988; for the A.D.E.A. by 42 U.S.C.§12117; for the Rehabilitation

Act, 29 U.S.C. § 791.

12.  The defendant [*check only those that apply*]

(a) ☐ failed to hire the plaintiff.

(b) ☐ terminated the plaintiff's employment.

(c) ☒ failed to promote the plaintiff.

(d) ☐ failed to reasonably accommodate the plaintiff's religion.

(e) ☐ failed to reasonably accommodate the plaintiff's disabilities.

(f) ☐ failed to stop harassment;

(g) ☒ retaliated against the plaintiff because the plaintiff did something to assert rights protected by the laws identified in paragraphs 9 and 10 above;

(h) ☐ other (specify): _____

_____

_____

_____

_____

_____

13.   The facts supporting the plaintiff's claim of discrimination are as follows:

_____

SEE ATTACHED COMPLAINT

_____

_____

_____

_____

_____

14.   [*AGE DISCRIMINATION ONLY*]  Defendant knowingly, intentionally, and willfully discriminated against the plaintiff.

15.   The plaintiff demands that the case be tried by a jury. ☒ YES     ☐ NO

16.   THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [*check only those that apply*]

(a) ☐ Direct the defendant to hire the plaintiff.

(b) ☐ Direct the defendant to re-employ the plaintiff.

(c) ☒ Direct the defendant to promote the plaintiff.

(d) ☐ Direct the defendant to reasonably accommodate the plaintiff's religion.

(e) ☐ Direct the defendant to reasonably accommodate the plaintiff's disabilities.

(f) ☒    Direct the defendant to (specify): _____

_____ SEE    ATTACHED    COMPLAINT _____

_____

_____

_____

_____

(g) ☒    If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(h) ☒    Grant such other relief as the Court may find appropriate.

(Plaintiff's signature)

_____ *Jerry C Brown* _____

(Plaintiff's name)

_____ Jerry   C   Brown _____

(Plaintiff's street address)

_____ 1520   Lee   Blvd _____

_____

(City) Berkeley   (State) IL   (ZIP) 60163

(Plaintiff's telephone number) (708) – 544-2994 _____

Date: April 25, 2005

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JERRY BROWN,                              )
         Plaintiff,                     )
                                   )
v.                                       )     No. _____
                                   )
ILLINOIS WASTE MANAGEMENT AND            )     JURY TRIAL DEMANDED
  RESEARCH CENTER, a division of the     )
ILLINOIS DEPT. OF NATURAL RESOURCES, a )
  department of the STATE OF ILLINOIS,   )
         Defendants.                    )

## COMPLAINT AT LAW

Now comes the Plaintiff, JERRY BROWN, Pro Se, 1520 Lee Boulevard, Berkeley, IL

60163, and hereby submits this complaint against the defendants, the ILLINOIS WASTE

MANAGEMENT AND RESEARCH CENTER, a division of the ILLINOIS DEPARTMENT of

NATURAL RESOURCES, a department of the STATE OF ILLINOIS.

### JURISDICTION AND VENUE

1. This is an action brought to remedy discrimination on the basis of race, ancestry and

national origin in the terms, conditions and privileges of employment and to remedy injuries

suffered by the Plaintiff pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000 et

seq., as amended by the Civil Rights Act of 1991 ("Title VII").

2. Injunctive and declaratory relief, damages and other appropriate legal and equitable

relief are sought pursuant to 42 U.S.C. 2000e(f), (g) and (k) et seq.

3. Plaintiff, Jerry Brown, a Black engineer employed with the Illinois Waste

Management and Research Center (WMRC) whose national origin is African-American, filed a

Charge of Discrimination against Defendants with the Equal Employment Opportunity

Commission (EEOC) and the Illinois Department of Human Rights (IDHR) on or about October

15, 2004, (Charge No. 210-2005-00318) complaining of the acts of discrimination alleged

herein. [Charge of Discrimination is Attached hereto as Appendix A].

4. On or about January 25, 2005, the EEOC issued a Dismissal and Notice of Rights Letter allowing the Plaintiff to sue the Defendants in federal court. [Dismissal and Notice of Rights Letter is Attached hereto as Appendix B].

5. Plaintiff Jerry Brown has complied fully with all the prerequisites to jurisdiction in the Court under Title VII. The court has original federal question jurisdiction pursuant to 28 U.S.C. 1331 and 1343.

6. As the unlawful employment practices complained of herein occurred within the Northern District of Illinois, venue is proper in this District.

## PARTIES

7. Plaintiff Jerry Brown is an Assistant Professional Scientist with WMRC, a position he has held since being hired by WMRC in November 1994.

8. Defendants are WMRC, a division within the Illinois Department of Natural Resources (DNR), a department of the State of Illinois. All actions alleged in this complaint which were taken by any persons, agents, or employees of the State of Illinois took place within the scope of their lawful authority given them by the State of Illinois and pursuant to those agents' and employees' official capacities and responsibilities.

9. Defendant State of Illinois is an "employer" within the meaning of Title VII, its actions are governed by Title VII, and it employs more than 500 employees in each of 20 or more calendar weeks in the current or preceding year. 42 U.S.C. 2000e(b) and 1981a(b)(3).

## STATEMENT OF CLAIM

10. Plaintiff has been employed by WMRC, a division of DNR, a department of the State of Illinois since November 1994. During that time, Plaintiff has only received salary increases that have approximately kept pace with inflation. Plaintiff is a Black male. Other professional employees (non-Black) with WMRC have received recognition and significant salary increases through the promotion process and through regular annual salary increases.

11. Plaintiff works in the Pollution Prevention (P2) Group of WMRC. Plaintiff's current supervisor is Raymond Ronda. The P2 Group's Manager is Dr. Timothy Lindsey.

- 2 -

12. Plaintiff has never been awarded a promotion despite Plaintiff's superior work performance (as evidenced by Plaintiff's performance evaluations prior to Plaintiff asking and later complaining about not receiving a promotion with commensurate salary increase), appropriate education level and extensive job experience. Other employees (non-Black) who have not demonstrated the overall skills that Plaintiff has demonstrated, who do not have the education and who do not have the engineering experience that Plaintiff has, have been promoted to Associate Professional Scientist or to Professional Scientist. Other employees (non-Black) have also been hired into those positions and in some cases to lower positions; but those employees have received significantly higher salaries than Plaintiff.

13. In 1997 and 1998, when Plaintiff began to question why he had not been promoted, Plaintiff's performance evaluations were lowered by Plaintiff's immediate supervisor, Malcolm Boyle. Although Plaintiff responded to each negative comment in the performance evaluation, WMRC management did not respond to Plaintiff's specific concerns about the untrue statements made in Plaintiff's performance evaluations.

14. On or about February 23, 2000, Plaintiff filed a grievance against WMRC and its management personnel with DNR.

15. On or about May 19, 2000, WMRC instituted the secondary probationary period specifically as a retaliatory response to Plaintiff filing aforementioned grievance.

16. On or about September 1, 2000 Plaintiff was placed on a secondary probation period due to a prejudiced and totally unsubstantiated poor performance evaluation from Plaintiff's supervisor, Malcolm Boyle.

17. On or about March 1, 2001, Plaintiff successfully completed his secondary probation period and was removed from probation. To the best of Plaintiff's knowledge, Plaintiff is the only WMRC employee who has had to endure a second probation period.

18. On or about October 1, 2001, Plaintiff's supervisor, Malcolm Boyle, was given a different position and was removed as Manager of the Chicago/Oak Brook P2 office. Raymond Ronda became Plaintiff's supervisor at that time.

19. On or about January 17, 2002, Plaintiff filed a Complaint At Law against his former supervisor, Malcolm Boyle, his current P2 Group Manager, Timothy Lindsey, WMRC, DNR and the State of Illinois in U.S. District Court for discrimination, failure to promote and retaliation.

20. Since Malcolm Boyle was replaced as Plaintiff's supervisor, Plaintiff has again received only excellent performance evaluations, demonstrating to WMRC management that Plaintiff did excellent work and that Plaintiff's former supervisor was the reason Plaintiff had received some low performance evaluations and also the reason Plaintiff was not promoted.

21. On or about April 1, 2002, Plaintiff's new supervisor sought to promote Plaintiff, but was discouraged from doing so by Katherine Day, WMRC Human Resources Manager. Plaintiff had been off probation for one year (as stated in the WMRC Policy Manual), but Katherine Day implied that she would have to check with WMRC's Legal Department on the matter and never responded to the promotion request. Katherine Day later made a statement that a two-year to three-year period was required following probation. This statement was not in the WMRC Policy Manual, but may be there now since Katherine Day is responsible for updating the WMRC Policy Manual.

22. At the same time, Katherine Day and Timothy Lindsey, anticipating a change in State government and a possible wage freeze, worked together to implement second promotions for two other employees of the P2 Group, neither of whom have the education or experience as the Plaintiff. Both employees were promoted to positions higher than Plaintiff's position on or about September 1, 2002.

23. At the same time, Katherine Day and Timothy Lindsey worked together to ensure that Plaintiff's former supervisor, Malcolm Boyle, was not demoted in terms of monetary compensation nor payroll grade.

24. On or about January 14, 2003, Rod Blagojevich, Governor of Illinois, issued Executive Order Number 1, ordering a freeze on hiring, filling vacancies, creating new positions and promoting for all agencies under the control or direction of the Governor. The order states

that there will be no exceptions without the express written permission of the Governor's office after submission of the appropriate requests.

25. On or about September 1, 2003, Plaintiff was informed that he could not receive a promotion due to the Governor's promotion and hiring freeze, although Plaintiff's supervisor, Raymond Ronda, still believed that Plaintiff was deserving of a promotion.

26. On or about September 1, 2004, Plaintiff was again informed that he could not receive a promotion due to the Governor's promotion and hiring freeze, although Plaintiff's supervisor, Raymond Ronda, still believed that Plaintiff was deserving of a promotion.

27. Since the Governor's promotion and hiring freeze have been in effect, WMRC has hired at least three permanent employees within the P2 group (two full-time employees and one part-time employee). All three persons are Caucasian. One of the three persons was "promoted" from being paid hourly at one WMRC location to being paid a salary at another WMRC location and was given an approximately 44% salary increase.

28. WMRC and its management have used the Governor's hiring and promotion freeze to further retaliate against Plaintiff. As it has been shown, WMRC can hire and promote persons should they desire to do so. The three positions were filled between December 2003 and January 2005 during the time of the Governor's hiring and promotion freeze. WMRC and its management have no desire to promote Plaintiff neither to the position nor to the salary Plaintiff has earned.

29. Plaintiff's salary has increased approximately 30% in 10-1/2 years of employment with WMRC. That equates to less than three percent per year, an amount that barely keeps pace with inflation.

30. Plaintiff's records indicate that all employees in Plaintiff's department with a Payroll Title lower than Professional Scientist and with at least five years at WMRC have received at least one promotion, except Plaintiff. Plaintiff has been with the department over ten years and has not received a promotion. The discriminatory and retaliatory actions of WMRC and its management are ongoing.

## FIRST CAUSE OF ACTION

31. Plaintiff incorporates the allegations of paragraphs 1 through 30 above and, in addition, states that Defendants' conduct in repeatedly failing to promote Plaintiff to the position of Associate Professional Scientist and to the position of Professional Scientist and in repeatedly failing to pay Plaintiff in line with other non-Black employees with similar education, experience and demonstrated skill level constitutes willful and illegal discrimination on account of Plaintiff's race, national ancestry and origin in violation of Title VII, 42 U.S.C. 2000(e) et seq.

## SECOND CAUSE OF ACTION

32. Plaintiff incorporates the allegations of paragraphs 1 through 31 above and, in addition, states that Defendants' conduct constitutes willful and illegal discrimination on account of and in retaliation for Plaintiff filing a grievance and a complaint of race, national origin, and national ancestry discrimination in violation of Title VII, 42 U.S.C. 2000(e) et seq.

WHEREFORE Plaintiff JERRY BROWN respectfully requests and prays that this Court enter judgment in favor of the Plaintiff and against Defendants for the following relief:

1. that the court find and declare that the Defendants engaged in race, national ancestry, and national origin discrimination against the Plaintiff in denying his promotion to Associate Professional Scientist and in denying his promotion to Professional Scientist;

2. that the court find and declare that the Defendants engaged in wrongful and illegal retaliation against the Plaintiff for exercising his lawful right to complain of discrimination against the Defendants by filing a charge of race, national origin and national ancestry discrimination with the IDHR and EEOC; and by filing a Complaint At Law against the Defendants with the U.S. District Court;

3. that the court order the Defendants to promote the Plaintiff to the position of Professional Scientist, which position he would have obtained had he not been the victim of race, national origin and national ancestry discrimination;

4. that the court order full back pay at the rate of compensation Plaintiff would have achieved had he not been the victim of wrongful discrimination on account of his race, national origin and national ancestry, plus interest;

5. that the court order full and complete compensatory damages for the violation of the Plaintiff's rights to be free from race, national origin and national ancestry discrimination including monetary damages for pain, suffering, humiliation, damage to Plaintiff's reputation, and loss of economic advantages and opportunities he would have gained if he had not been discriminated against;

6. that the court order WMRC to make its promotion process clear to all its employees and that WMRC post notices for all open positions within its organization;

7. that the court order WMRC to actively seek to hire more minority employees and that WMRC pay its minority staff at levels consistent with its non-minority employees for similar experience levels, education levels, responsibilities, job functions and job performance.

8. that the court award attorneys fees and costs in prosecuting and pursuing relief for the unlawful discrimination alleged herein;

9. that the court award any other relief which is equitable and just.

Respectfully submitted,

Jerry C. Brown
Pro Se

1520 Lee Boulevard
Berkeley, IL 60163
(708) 544-2994

APPENDIX A

EEOC Form 5 (5/01)

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 210-2005-00318 |

**Illinois Department Of Human Rights** and EEOC
_State or local Agency, if any_

Name (Indicate Mr., Ms., Mrs.): **Mr. Jerry C. Brown**
Home Phone No. (Incl Area Code): **(708) 544-2994**
Date of Birth:

Street Address: **1520 Lee Blvd. Berkeley, IL 60163**
City, State and ZIP Code:

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

Name: **IL WASTE MANAGEMENT & RESEARCH**
No. Employees, Members: **500 or More**
Phone No. (Include Area Code): **(630) 472-5016**

Street Address: **1010 Jorie Blvd. Suite 12, Oak Brook, IL 60523**
City, State and ZIP Code:

Name:
No. Employees, Members:
Phone No. (Include Area Code):

Street Address:
City, State and ZIP Code:

DISCRIMINATION BASED ON (Check appropriate box(es).)
☒ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☒ RETALIATION ☐ AGE ☐ DISABILITY ☐ OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: **12-19-2003**    Latest: **09-28-2004**
☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s).):

I began my employment with the Respondent in or around November 1994. My most recent position is Manufacturing Process Engineer. In or around September 2004, I was informed that I would not receive a promotion to the position of Associate Professional Scientist nor to the position of Professional Scientist. In or around 2002, I filed a lawsuit against the Respondent claiming racial discrimination and retaliation. Since filing the law suit, I have failed to be promoted and have only received a minimal salary increase.

I believe that I have been discriminated against on the basis of my race, Black, and on the basis of retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended.

> RECEIVED EEOC
> OCT 15 2004
> CHICAGO DISTRICT OFFICE

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)

Oct 15, 2004
Date

_Jerry C. Brown_
Charging Party Signature

**Equal Employment Opportunity Commission**

## DISMISSAL AND NOTICE OF RIGHTS   *APPENDIX B*

To: CERTIFIED MAIL NO.: 7099-3400-0014-4048-0551C/P

Jerry C. Brown
1520 Lee Boulevard
Berkeley, Illinois  60163

From:
Equal Employment Opportunity Commission
Chicago District Office
500 West Madison Street, Suite 2800
Chicago, Illinois 60661-2511

[  ]  *On behalf of a person aggrieved whose identity is*
    *CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 210-2005-00318 | Ms. Patricia Jaramillo, Enforcement Supervisor | (312) 886-3576 |

*(See the additional information attached to this form.)*

YOUR CHARGE IS DISMISSED FOR THE FOLLOWING REASON:

[  ]  The facts you allege fail to state a claim under any of the statutes enforced by the Commission

[  ]  Respondent employs less than the required number of employees.

[  ]  Your charge was not timely filed with the Commission, *i.e.*, you waited too long after the date(s) of the discrimination you alleged to file your charge. Because it was filed outside the time limit prescribed by law, the Commission cannot investigate your allegations.

[  ]  You failed to provide requested information, failed or refused to appear or to be available for necessary interviews/conferences, or otherwise refused to cooperate to the extent that the Commission has been unable to resolve your charge. You have had more than 30 days in which to respond to our final written request.

[  ]  The Commission has made reasonable efforts to locate you and has been unable to do so. You have had at least 30 days in which to respond to a notice sent to your last known address.

[  ]  The respondent has made a reasonable settlement offer which affords full relief for the harm you alleged. At least 30 days have expired since you received actual notice of this settlement offer.

[ x ]  The Commission issues the following determination: Based upon the Commission's investigation, the Commission is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[  ]  Other (*briefly state*)  _____

### - NOTICE OF SUIT RIGHTS -

[ x ]  **Title VII and/or the Americans with Disabilities Act:** This is your NOTICE OF RIGHT TO SUE, which terminates the Commission's processing of your charge. If you want to pursue your charge further, you have the right to sue the respondent(s) named in your charge in a court of competent jurisdiction. **If you decide to sue, you must sue <u>WITHIN 90 DAYS</u> from your receipt of this Notice; otherwise your right to sue is lost.**

[  ]  **Age discrimination in Employment Act:** This is your NOTICE OF DISMISSAL OR TERMINATION, which terminates processing of your charge. If you want to pursue your charge further, you have the right to sue the respondent(s) named in your charge in a court of competent jurisdiction. **If you decide to sue, you must sue <u>WITHIN 90 DAYS</u> from your receipt of this Notice; otherwise your right to sue is lost.**

[  ]  **Equal Pay Act (EPA):** EPA suits must be brought within 2 years (3 years for willful violations) of the alleged EPA underpayment.

*January 25, 2005*

On behalf of the Commission

*John P. Rowe (s)*
_____
John P. Rowe, District Director

Enclosures
  Information Sheet
  Copy of Charge
cc: Respondent(s)    Illinois Waste Management & Research

EEOC Form 161 (Test 5/95)