

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

L **FILED**

AUG - 8 2008
*Aug 8. 2008*
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

JERRY BROWN, )
        Plaintiff, )
         )
v. ) No. 07 C 7080
         )
ILLINOIS DEPT. OF NATURAL RESOURCES, ) Honorable James B. Zagel
        Defendant. )
         ) Magistrate Judge Valdez
         )

## NOTICE OF FILING

To:    Ms. Mary M. Madden
        Assistant Attorney General
        100 West Randolph Street, 13th Floor
        Chicago, Illinois 60601

      **PLEASE TAKE NOTICE** that on the 8th day of August, 2008, I caused to be filed
with the Clerk of the United States District Court, Northern District of Illinois, Eastern
Division, 219 South Dearborn Street, Chicago, Illinois, 60604, the attached **PLAINTIFF'S
RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
COMPLAINT AT LAW**, a copy of which is attached and hereby served upon you.

                      Respectfully submitted,

                      Jerry Brown,
                      PLAINTIFF
                      1520 Lee Blvd.
                      Berkeley, IL  60163
                      (708) 544-2994

### CERTIFICATE OF SERVICE

The undersigned states that a copy of the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AT LAW** was served upon the above named at the above address by hand delivering same to the address below on the 8th day of August 2008.

Ms. Mary M. Madden
Assistant Attorney General
100 West Randolph Street, 13th Floor
Chicago, Illinois 60601

JERRY BROWN



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED

AUG - 8 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| JERRY BROWN, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07 C 7080 |
| | ) | |
| ILLINOIS DEPT. OF NATURAL RESOURCES, | ) | Honorable James B. Zagel |
| Defendant. | ) | |
| | ) | Magistrate Judge Valdez |
| | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AT LAW

**NOW COMES** the Plaintiff, JERRY BROWN, and hereby responds to Defendant's Motion to Dismiss Portions of Plaintiff's Complaint At Law. In support of its Response, Plaintiff states as follows:

### I.    INTRODUCTION

On June 4, 2008, Defendant filed a motion asking this Court to dismiss Plaintiff's Complaint, Case No. 07 C 7080. On June 20, 2008, this Court dismissed Plaintiff's claims against individual defendants Lindsey, Day and Vander Velde. Plaintiff was instructed that he could file an amended complaint against the correct entity, Illinois Department of Natural Resources (IDNR). On August 8, 2008, Plaintiff filed Plaintiff's First Amended Complaint in this instant action. This Court should deny Defendant's motion for dismissal of the four remaining items for the following reasons:

1. A downgraded performance evaluation at WMRC is an adverse employment action because WMRC uses the performance evaluations to determine if an employee will

1

receive a promotion or a salary increase.  If a salary increase is granted, the performance evaluation is used to determine the amount of the salary increase.

2. As stated in Amended Complaint, a discrete action occurred on or about May 17, 2007, within 300 days of filing the EEOC charge on July 6, 2007.  Furthermore, Plaintiff contends that WMRC's practice of not informing staff when discrete decisions, such as promotions or awarding of special salary increases, are made is deliberately done to cover WMRC's discriminatory actions.

3. Plaintiff's claim of unequal pay is a separate and discrete action, taken in conjunction with and as a result of Plaintiff's 2006 performance evaluation.  Payroll decisions are made annually.  Plaintiff's claim is not duplicative of past claims because of the different time frame and the different stated EEOC charge.

4. Plaintiff's EEOC charge filed on or about February 29, 2008 and incorporated as a part of the Amended Complaint does state national origin and ancestry/ethnicity.

## II.   ARGUMENT

Each of Defendant's reasons for dismissing a specific portion of Plaintiff's Complaint will be addressed in detail.

1. Defendant states that Plaintiff's claim of "repeatedly downgrading [his] performance evaluation" should be dismissed because this does not rise to the level of an adverse employment action.

According to the WMRC Procedures Manual, compensation and promotion are both based on the performance evaluation.  (A true and correct copy of the WMRC Compensation policy is attached hereto as **Exhibit A.**  A true and correct copy of the WMRC Promotion policy is attached hereto as **Exhibit B.**  A true and correct copy of the WMRC Performance

2

Evaluation Guidelines is attached hereto as **Exhibit C**). If the performance evaluation was downgraded for discriminatory purposes and not in accordance with WMRC performance evaluation guidelines, then the act of downgrading is an adverse employment action. WMRC management can actually look back on three years of performance evaluations to determine promotion eligibility. The downgraded performance evaluation would give rise to an unequal payroll increase in the present year and possibly in future years also. The performance evaluation is an integral part of the payroll salary increase process.

2. Defendant states that Plaintiff's allegation that he received unequal pay does not include any discrete employment action that occurred within 300 days of his EEOC charge.

Plaintiff filed Amended Complaint in this instant matter on August 8, 2008. The Amended Complaint stipulated a discrete employment action that occurred on May 17, 2007 which is within 300 days of Plaintiff filing his July 6, 2007 EEOC charge. Plaintiff was not aware of this fact when his July 6, 2007 EEOC charge was filed. Other actions may have also occurred within the 300-day period. WMRC no longer announces its payroll promotions. The ruling in *Ledbetter* limits the time for filing; but companies can conceivably withhold information about discrete actions taken in order to hide their discriminatory practices. It may be that the only way to determine if a discrete discriminatory act occurred is to file an EEOC charge and a lawsuit. Courts should not immediately dismiss suits because no discrete action can immediately be cited. Circumstances should be used to determine if the case should proceed to Discovery where companies can be compelled to disclose whether or not they took discrete employment actions.

3. Defendant states that *res judicata* bars Plaintiff from re-litigating his unequal pay claim.

Defendant's first point is correct – this case involves the same parties as *Brown I* and *Brown II*.

Defendant's second point is incorrect. A final judgment has only been made in *Brown I*. No final judgment has been made in the case presently before the Honorable Milton Shadur (05 C 2460, or *Brown II*). On July 14, Plaintiff filed a motion requesting Judge Shadur to clarify his position on the issue of unequal pay. (A true and correct copy of Plaintiff's motion is attached hereto as **Exhibit D**). Judge Shadur refused to rule on the substance of the motion and simply denied it as being ill-presented. Judge Shadur will consider Defendant's motion for summary judgment on August 14, 2008. Plaintiff must respond by September 18, 2008. No final judgment in the matter has been decided. Therefore Defendant's second point is incorrect.

In the second point, Defendant also makes a mischaracterization of both *Brown I* and *Brown II* by stating, "…there have been final judgments on the merits of the previous cases involving Plaintiff's unequal pay claims." A careful reading of <u>Brown v. Illinois Department of Natural Resources</u>, 499 F.3d 675 (7th Cir. 2007), i.e., *Brown I*, will show that the only complaint raised by Plaintiff was *failure to promote*. That was the only matter ruled on by the 7th Circuit. This instant matter is not about failure to promote – it is about a disparate pay system and unequal pay.

In *Brown II*, even when a final judgment is made, Judge Shadur is also only viewing the case as failure to promote and retaliation. In the judge's Memorandum order and Opinion dated September 10,2007, paragraph 2, Judge Shadur defines the parameters of the case as follows: "…in part by limiting Brown's potentially actionable claim here to the failure of

4

Department to promote him in September 2004 (the only "discrete act" of alleged discrimination that took place during the 300 days preceding Brown's Charge of Employment Discrimination)...." His next paragraph reads: "Not only is Brown limited in his failure-to-promote-based claim to the September 2004 action (or inaction) by Department...." Judge Shadur clearly views the case as only a failure to promote claim (following the pattern of Plaintiff's first case), despite Plaintiff's statement of having "only received a minimal salary increase" that is included in Plaintiff's EEOC charge filed on October 15, 2004. Judge Shadur's September 26,2007 Memorandum Order will again show that he only dealt with the issue of failure to promote and any subsequent retaliation by Defendant against Plaintiff for filing a charge and a lawsuit. In neither memorandum does Judge Shadur mention unequal pay. [A true and correct copy of the 7th Circuit's decision, both of Judge Shadur's Memorandum Orders and Plaintiff's October 15, 2004 EEOC charge are attached to Defendant's Motion to Dismiss (Exhibits B, D, E, and C, respectively) and have not been reproduced within this motion]. Therefore Defendant's second point to invoke *res judicata* is incorrect on another issue.

Defendant's third point to invoke *res judicata* is also incorrectly stated. Promotional increases are limited to 5% according to Defendant. The exception, according to Defendant, has been those employees who received assumed management responsibilities. The courts have only dealt with whether or not Plaintiff was discriminatorily denied promotion. The core issue of salaries paid and non-promotional increases has not been dealt with. Plaintiff is asserting that Defendant has paid certain staff salary increases apart from the September 1 time period as called for in Compensation (Exhibit A). This instant action is based on one such occurrence of awarding of salary increases. Others may have occurred. Furthermore, Plaintiff

asserts that Defendant has done so secretively in order to discriminate against Plaintiff. In addition, downgraded performance evaluations have been used to limit Plaintiff's salary increases. Finally, adherence by managers to subject non-Black employees to the performance evaluation guidelines in the same manner as Plaintiff has not been investigated.

    4. Defendant states that Plaintiff should be barred from bringing a duplicative claim.

    Defendant's fourth point involves the matter currently before the Honorable Judge Holderman (07 C 2808). Judge Holderman has allowed the case to proceed under the parameters established in his ruling on January 22, 2008. (A true and correct copy of Judge Holderman's docket entry statement is attached hereto as **Exhibit E**). The statement concludes, "Those allegedly deficient pay amounts must proven to be tied to the promotions plaintiff was denied because of his race or national origin or as a result of any retaliation against plaintiff by defendant for plaintiff asserting his rights." In other words, the deficient pay can only be tied to the promotion that was denied Plaintiff due to alleged discrimination. The only discrete act of discrimination claimed after April 1, 2006 is the promotion of Debra Jacobson to Office Supervisor instead of Plaintiff. That is the only matter being dealt with before Judge Holderman along with any resulting consequences of that failure to promote. The promotion of Jacobson occurred on April 10, 2006. Jacobson received a $4,000 annual salary increase at that time. The salary increases awarded to non-Black employees and stated as a discrete action in the amended complaint for this instant action (07 C 7080) occurred on May 17, 2007. The two instances are more than 300 days apart. *Ledbetter* states that a discrimination charge must be filed within 300 days of a discrete action. This was done for both cases – 05 C 2808 and 05 C 7080. The two cases focus on two different discrete actions by Defendant. The former focuses on a failure to promote. This instant action is the only time

Plaintiff has filed a charge with EEOC alleging that Defendant has a disparate pay system. Defendant's payroll policies have never been explained, revealed or adjudicated. This instant action will focus on revealing that alleged disparate pay system.

Although Plaintiff can only file a charge based on a discrete act occurring within 300 days of filing an EEOC charge, the history of Defendant's actions against Plaintiff in the area of salary as compared to non-Black employees should not barred from being introduced. Those items are not actionable, but they will demonstrate that the current acts by WMRC management (those within the 300-day period) are more instances of a continuing history of discrimination by WMRC management against Plaintiff in the area of salary paid to employees. This charge is not duplicative of previous charges and should not be dismissed. In a similar manner, if a Defendant were cleared of a sexual harassment complaint in 2006, the Court would not grant license to Defendant by stating that a Plaintiff could not bring a sexual harassment complaint for another discrete action done by Defendant in 2007.

5. Defendant states that Plaintiff's EEOC charge does not state ancestry or national origin discrimination.

Plaintiff filed amended complaint on August 8, 2008. The EEOC charge filed on February 29, 2008 does state national origin and ancestry/ethnicity. (A true and correct copy of the first page of Plaintiff's 2-29-08 EEOC charge is attached hereto as **Exhibit F**). Therefore this charge should not be dismissed.

**WHEREFORE**, Plaintiff, Jerry C. Brown, respectfully requests that this Honorable Court deny Defendant's Motion to Dismiss, and for further relief this Court deems just and proper.

Respectfully submitted,

Jerry C. Brown
PLAINTIFF
1520 Lee Blvd.
Berkeley, IL  60163
(708) 544-2994

## WASTE MANAGEMENT and RESEARCH CENTER
## INTERNAL OPERATING PROCEDURES MANUAL

| | |
|---|---|
| **Chapter 3** | **Personnel** |
| **Section 3a** | **Personnel Transactions** |
| **Subsection 3a-4** | **Compensation** |

The Board has established a schedule of title and minimum salary ranges for all positions (see attached). These minimum salary ranges are adjusted periodically to reflect inflationary changes. It is the responsibility of Center supervisors and the Human Resource Manager to ensure that salary minimums are observed for the positions listed.

Annual salary increases are normally awarded on September 1 of each year. The percentage of increase is approved by the Salary Committee of the Board of Natural Resources and Conservation pursuant to in the Department's annual budget submission.

All pay increases are awarded based on merit determined by the annual performance evaluation. Recommendations for these salary increases are submitted by the supervisory staff to the Center Director for consideration and forwarded to the Board's Salary Committee for approval.

Mid-year salary increases, including increases for probationary staff members who were on probation at the time annual increases were given may be awarded at other times of the year if funding is available. Recommendations for these salary increases are submitted by the supervisory staff for consideration by the Center Director and then forwarded to the Board's Salary Committee for approval.

**Revision Date:** _____

EXHIBIT A

Chapter 3
Section 3a
Subsection 3a-12

# WASTE MANAGEMENT and RESEARCH CENTER
## INTERNAL OPERATING PROCEDURES MANUAL

| | |
|---|---|
| **Chapter 3** | **Personnel** |
| **Section 3a** | **Personnel Transactions** |
| **Subsection 3a-12** | **Promotion** |

In accordance with *BNRC Policy, Procedure and Information Manual, 7A-If*, promotions are based upon performance from visible and demonstrable evidence that the individual has attained competence and qualifications to function at the promotional level.

## I. Criteria

To be eligible of a promotion, a staff member must have:

- successfully completed the probationary review period
- consistent above-average performance evaluations, usually with a minimum of one year at the Center, preferably 2-3 consecutive years
- met requirements listed in the Center's promotional track system (education, years of experience & time-in grade)

## II. Procedure

A staff member must be recommended for promotion by his/her supervisor to the Center Director. If approved, the Center Director will forward to the Human Resource & Finance Manager for routing to the salary Committee for approval.

A staff member will be notified in writing from the Center Director if the promotion is approved/denied.

EXHIBIT B
**DOCUMENT #_87**

## Waste Management & Research Center

### Guidelines for Completing Performance Evaluations

These guidelines are provided to assist evaluators with selecting an appropriate rating based on the staff member's performance. The definitions are not intended to be all-inclusive, nor would every stated element of the description apply for determining any respective rating (e.g., regarding communication: presentation skills may not be needed for a specific job, so that factor wouldn't apply). The *closest* or *most appropriate* factor description rating should be selected to determine a rating.

The factors listed are also not intended to be all-inclusive or applicable in all situations. These are factors that evaluators may want to consider when determining a staff member's rating for a specific key duty or professional quality. Certainly, all of these factors do not apply to each key duty or professional quality. Additionally, there may be other factors, not listed here, that might be applied in determining a rating. These are intended only to provide evaluators with some guidance. Evaluators are encouraged to use their best judgement when rating their staff members.

$EXHIBIT$ C

# Guidelines for Completing Performance Evaluations

April 2000

| Job Knowledge & Performance | Outstanding | Fully Satisfactory | Meets Most Expectations | Significant Improvement Needed | Job Requirements |
|---|---|---|---|---|---|
| Knowledge, Skills & Ability (KSA) | Superior KSAs; works quickly to fill knowledge or skill voids | Possesses KSAs to fulfill job tasks in effective manner | Possesses KSAs to fulfill job tasks in effective manner; may need additional training or supervisory assistance on specific tasks | KSAs to perform tasks lacking in some areas; needs to work with supervisor to close gaps | KSAs or motivation to employ them are lacking |
| Reliability | Superior, totally dependable; superior follow through with no prompting, despite workloads | Very good; dependable performer, prompting not needed | Good; able to meet routine expectations; may need supervision for non-routine tasks | Inadequate; unable to be counted on without repeated prompting | unreliable; cannot be depended upon to complete tasks |
| Timeliness | All tasks completed on or ahead of schedule | All high priority tasks completed on/or ahead of schedule | Occasionally missed schedules on various tasks | Too often missed schedules on tasks | Does not routinely meet schedules |
| Accomplish Goals | Met/exceeded all task goals | Met all task goals; | Met most task goals;may have missed minor goals | Did not meet some significant task goals | Did not routinely meet task goals |
| Expectations | Exceeds expectations; displays great understanding of job requirements; is able to chart a course of action and meet all performance goals | Met expectations; understands job requirements; is able to chart course of action | Met most expectations | Performing below expected/ potential performance levels | Does not meet basic expectations |
| Supervision Needs | Effective performer with little or no supervision | Able to meet all job responsibilities with minor supervision | Performance improves with closer supervision | Adequate performance only with regular supervision | Requires an inordinate amount of supervision |
| Quality | Consistently delivers superior quality | Routinely delivers top quality products and services. | Generally of acceptable quality; stronger focus on quality would improve performance | Marginal quality--needs much stronger focus in this area | Unacceptable quality |

| Professional Qualities | Exceeds Expectations | Exceeds/Meets Expectations | Meets Most Expectations | Significant Improvement Needed | Not Acceptable |
|---|---|---|---|---|---|
| Organization | Exceptional skills; highly efficient and effective use of time; freely offers project planning assistance | Uses excellent planning skills to accomplish tasks efficiently & effectively | Generally good planning skills; may occasionally need guidelines for prioritizing tasks | Some planning attempted; often needs assistance in developing work plan to prioritize and complete tasks | Poor skills; unable to prioritize tasks; unable to structure time to accomplish tasks |
| Productivity | Consistently high productivity with excellent results | Highly productive the majority of the time; good to excellent results | Productivity usually meets expectations; better planning skills would increase productivity | Marginal productivity level; generally below expectations | Very low productivity; unable to meet minimal expectations |
| Relevance to Program | Good understanding and acceptance of Center's/Program's focus/role/mission; strives to work toward them; successfully solicits projects in appropriate areas to meet Center's mission/enhance reputation | Basic understanding and acceptance of Center's/Program's focus/role/mission; focuses efforts in appropriate areas | Generally understands and accepts Center's/Program's focus/role/mission; usually focuses efforts in appropriate areas, but occasionally steers off-course into areas only indirectly related | Tends to select projects/tasks not directly related to Center's/Program's focus/role/mission | Does not display knowledge/understanding of Center's/Program's focus/role/mission; makes no attempt to assist with reaching these goals |
| Collegial Interactions | Superior people skills; easily accepts/adjusts to personality differences; professional interactions; strives for comfort level in interactions | Good people skills; interacts professionally with people | Professionally interacts with others in most situations | Interactions are often unprofessional; can be intimidating or reclusive and unresponding; sometimes makes other uncomfortable | Routinely interacts in unprofessional manner; often intimidating; makes other uncomfortable; purposely disruptive |
| Adaptability | Very adaptable; willing and able to change direction as requested and remain highly productive | Adaptable; generally willing and able to change direction as requested; remains productive | Adaptable, but less willing to change direction; productivity may suffer initially | Less adaptable with new assignments causing confusion, loss of productivity, and potential resentment | Unwilling to change assignments; resents adjusting to new circumstances |
| Communication | Superior communication skills; understands importance; polished presentation skills; good listener | Professional verbal and written skills; understands importance; good presentation skills; good listener | Acceptable communication skills; occasionally sub-standard; essentially understands importance; presentation and/or listening skills need polishing | Weak or marginal skills; loses sight of importance; presentation skills need work; poor self-evaluative skills | Poor communicator-- ineffective (verbal and/or written); does not understand or accept importance of skills to the job |

| | Consistently Exceeds Expectations | Fully Satisfactory | Meets Most Expectations | Significant Improvement Needed | Unsatisfactory |
|---|---|---|---|---|---|
| **Teamwork** | Outstanding teamwork skills; provides team leadership/direction; keeps all necessary parties informed of team progress; takes initiative | Very good team player; may provide leadership/direction to team; willingly contributes to team success | Good team player; participates actively; generally fulfills role | Inadequate team skills; does not actively participate on assigned teams; inadequately contributes any benefit to team success | Not effective working on teams; does not embrace roles; unwilling to interact effectively on teams |
| **Attitude** | Positive and professional. Positively influences attitude of others. | Positive and professional. Motivates others to perform at their best. | Positive attitude for most assignments. May occasionally have bad outlook. | Generally poor attitude towards work and coworkers/supervisors. | Poor attitude; unduly critical of peers and others in the workplace. |
| **Client Service** | Excels at embracing client needs and meeting or exceeding those needs in a timely manner. | Makes every effort to understand client's needs and address those needs. | Makes some efforts to understand client needs and to address those needs. | Doesn't often understand/ embrace client's needs or respond appropriately to client requests. | Doesn't comprehend or is unwilling to commit to the needs of the client. |
| **Attendance** | Excellent attendance; very few unplanned absences; punctual; reports/ announces absences on timely basis/follows procedures | Good attendance; punctual; few unplanned absences; reports/announces absences on timely basis | Typically good attendance; occasionally tardy | Borderline attendance/ punctuality; often late; inattentive in reporting/ announcing absences | Poor attendance; often tardy; absences poorly communicated |
| **Task Reliability** | can always be relied upon to meet deadlines | typically meets deadlines | fairly dependable meeting deadlines | frequently misses deadlines | rarely attempts to make deadlines (frequently without reasonable excuse) |
| **Planning/ Prioritization Skills** | Superior prioritization skills; detailed oriented; good 'big picture' planning skills | Properly prioritizes workload; plans ahead to ensure deadlines are met | Tasks are typically appropriately prioritized; occasionally needs help or makes questionable decisions (e.g., different view from supervisor); sometimes selects preferred tasks vs. those most important | Struggles with prioritization--needs above-expected supervisory assistance; doesn't typically plan ahead; tends to work on preferred tasks vs. those most important | Poor planning & prioritization skills; does not plan ahead; usually works on preferred tasks vs. those most important |

Confidential

| | Commendable | Fully Satisfactory | Meets Most Expectations | Significant Improvement Needed | Not Acceptable |
|---|---|---|---|---|---|
| **Decision-making Skills** | Superior problem-solving skills; anticipates potential problems & acts before problem exists or elevates; thoughtful resolutions; sets positive example regarding demeanor/behavior; always accepts responsibility for actions/judgement; wise choices regarding project/tasks/workplace interactions | Effectively evaluates problems/situations; develops sound solutions; Appropriate workplace demeanor/behavior; accepts responsibilities for actions/judgement. Makes good decisions regarding projects/tasks/workplace interactions | Usually evaluates problems/situations effectively, but an occasional questionable choice; generally acceptable workplace demeanor/behavior; usually accepts responsibility for actions/judgement | Frequently ineffective problem-solving skills; Tends to create problems for others; questionable workplace demeanor/behavior; frequently not accountable for actions/judgement (blames others) | Primarily ineffective problem-solving skills; unacceptable demeanor/behavior; blames others for own poor judgement/actions |
| **Safety Practices** | Takes safety issues seriously; respects/ follows policies/ practices; ensures safety for self and others; makes management aware of unsafe situations/ practices | Always aware of environment; respects & follows safety policies/ practices; makes good judgement calls regarding personal safety and that of others | Usually follows safety policies/practices; occasionally put safety in question | Sometimes ignores safety policies/practices; frequently puts safety in question | Frequently ignores safety policies/practices; puts own or others' safety at risk |
| **Time Management** | Makes most of time available; avoids time-wasting situation/environment; effectively manages time to allow for expansion of duties; routinely couples tasks for efficiency | Makes good use of time; typically avoids time-wasting situation/environment; is able to exand duties; often couples tasks for efficiency | Usually makes good use of time; occasionally involved in time-wasing activities; needs more focus on efficient accomplishment of tasks | Often spends time on non-productive activities; inadequate concern for efficiency | Frequently wastes time; shows no concern for efficiency; spends too much time on non-productive activities |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JERRY BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | No.  05 C 2460 |
| | ) | |
| v. | ) | Judge SHADUR |
| | ) | Magistrate Judge NOLAN |
| ILLINOIS DEPARTMENT OF | ) | |
| NATURAL RESOURCES, | ) | |
| | ) | |
| Defendant. | ) | |

## NOTICE OF MOTION

To:   Ms. Mary M. Madden
      Assistant Attorney General
      100 West Randolph Street, 13th Floor
      Chicago, Illinois 60601

**PLEASE TAKE NOTICE** that on the 17th day of July, 2008, at 9:00 a.m., or as soon thereafter as counsel may be heard, I shall appear before the Honorable Milton I. Shadur, or whomever may be sitting in his stead, at the United States District Court for the Northern District of Illinois, Eastern Division, at 219 South Dearborn Street, Chicago, Illinois, Room 2303, and then and there present the attached **PLAINTIFF'S MOTION FOR COURT TO CLARIFY ITS POSITION ON THE ISSUE OF PLAINTIFF'S UNEQUAL PAY CLAIM**, a copy of which is attached and hereby served upon you.

Jerry Brown,
PLAINTIFF
1520 Lee Blvd.
Berkeley, IL  60163
(708) 544-2994

EXHIBIT D

## CERTIFICATE OF SERVICE

The undersigned states that a copy of the above mentioned **PLAINTIFF'S MOTION FOR COURT TO CLARIFY ITS POSITION ON THE ISSUE OF PLAINTIFF'S UNEQUAL PAY CLAIM** was served upon the above named at the above address by hand delivering same to the address below on the 14th day of July 2008.

Ms. Mary M. Madden
Assistant Attorney General
100 West Randolph Street, 13th Floor
Chicago, Illinois 60601


JERRY BROWN

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JERRY BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | No.  05 C 2460 |
| | ) | |
| v. | ) | Judge SHADUR |
| | ) | Magistrate Judge NOLAN |
| ILLINOIS DEPARTMENT OF | ) | |
| NATURAL RESOURCES, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S MOTION FOR COURT TO CLARIFY ITS POSITION ON THE ISSUE OF PLAINTIFF'S UNEQUAL PAY CLAIM

**NOW COMES** the Plaintiff, JERRY BROWN, and hereby moves this Honorable Court for an order clarifying its position on the issue of Plaintiff's unequal pay claim as it relates to this instant action, **05 C 2460**. In support of this motion, Plaintiff states as follows:

### I.    INTRODUCTION

On or about April 25, 2005, Plaintiff filed a complaint at law against Defendant, Illinois Department of Natural Resources.  A true and correct copy of Paragraph 31 of Plaintiff's complaint is attached hereto as **Exhibit A**.  A true and correct copy of Plaintiff's EEOC filing associated with the complaint at law is attached as **Exhibit B.**  In the EEOC filing, Plaintiff cited having only "received a minimal salary increase" and in the complaint, Plaintiff cited "repeatedly failing to pay Plaintiff in line with other non-Black employees with similar education, experience and demonstrated skill level constitutes willful and illegal discrimination on account of Plaintiff's race, national ancestry and origin in violation of Title VII, 42 U.S.C. 2000(e) et seq."

EXHIBIT D

On or around June 20, 2008, Defendant presented a motion before the Honorable James

Zagel to dismiss Plaintiff's complaint at law (07 C 7080), citing in part *res judicata*. A true and

correct copy of Defendant's Notice to Dismiss, Defendant's Motion, and pages 1-4 and pages

8-11 of Defendant's Memorandum of Law are attached as **Exhibit C.** Defendant states that

Plaintiff's unequal pay claim should be barred because "they are the identical claims in *Brown I*

and *Brown II*." *Brown I* only dealt with a failure to promote and not with unequal pay.

Plaintiff is not seeking a ruling from this court regarding anything dealing with *Brown I*.

Plaintiff is seeking an order from this court stating whether or not this court reviewed the

matter of unequal pay in this instant matter, **05 C 2460**. It is Plaintiff's belief that this court

stated that if it's a matter of unequal pay, Plaintiff should have filed a suit alleging unequal pay.

Plaintiff presently has such an unequal pay suit before Judge Zagel, although Plaintiff believes

that this instant matter should have encompassed unequal pay, referencing Exhibit A and

Exhibit B. Defendant even cites Plaintiff's paragraph 31(document 9, page 10) as a reason to

bar the unequal pay claim. Plaintiff also has a case before the Illinois Human Rights

Commission that has been delayed due to Defendant's claim of *res judicata*. A true and correct

copy of Plaintiff's charge filed in that matter is attached as **Exhibit D**. However, Plaintiff has

been unable to adjudicate the matter of unequal pay before this honorable court because

Plaintiff has not been given access to Defendant's records. Plaintiff requests a ruling from this

Honorable Court on this matter for clarity.

## II. ARGUMENT

**A. Plaintiff has Sought to Obtain Comparative Information Regarding Reasons**

   **Defendant Consistently Pays non-Black Professional Scientists Significantly**

   **More that Plaintiff is Paid while Paying non-Black Supportive Scientists**

**Approximately the Same Salary as Plaintiff; Defendant has always denied**

**Plaintiff Access to Such Information**

Examples of this were evident from the deposition of former WMRC Director, George Vander Velde. Dr. Vander Velde could not tell why Plaintiff's salary was so far below those who were one pay grade above Plaintiff. For instance, Plaintiff's salary is approximately $25,000 less than Boyle's salary. Plaintiff's salary was $16,000 below Kraybill's salary and WMRC terminated Kraybill for poor performance. In addition, Kraybill was located in an area that WMRC recognizes as having a lower cost of living. WMRC allows for additional salary in the Chicago area where Plaintiff is located. Boyle, Kraybill and Plaintiff have approximately the same years of experience. Boyle and Plaintiff have masters degrees and Kraybill has a bachelors degree.

Dr. Vander Velde was equally unable to explain why those employees situated three pay grades below Plaintiff were earning starting salaries within $5,000 of Plaintiff's salary. Some employees were even located in areas where the cost of living would have dictated a salary of at least $6,000 (10%) less than Plaintiff's if they were at the same pay level of Plaintiff. When questioned about these positions, Dr. Vander Velde did say that the positions of "supportive" scientist had less responsibility than Plaintiff's position of "professional" scientist, yet the supportive scientists were paid about the same (but only in Plaintiff's case).

Vander Velde attempted to explain the discrepancies by stating that longevity works against the employee and that on several occasions WMRC had attempted to allow IDNR to provide market equity increases for WMRC to no avail. However, in reviewing the actual salaries of long-time degreed scientists, none have low salaries similar to Plaintiff. Dr. Vander Velde was unable to explain the differences.

3

B. **Defendant is Stating that the Unequal Pay Issue has been Adjudicated, while at the same time Refusing to Provide Documentation to Plaintiff that will Allow Plaintiff to Pursue the Issue of Unequal Pay**

Defendant consistently states that providing such information would be burdensome, but providing the information is the only way the issue of Unequal Pay can be litigated.

**WHEREFORE**, Plaintiff requests that this Honorable Court issue an order stating whether or not this court has reviewed and adjudicated the issue of unequal pay as it relates to Plaintiff's complaints through 2005.

Respectfully submitted,

Jerry C. Brown
PLAINTIFF
1520 Lee Blvd.
Berkeley, IL 60163
(708) 544-2994

4

## FIRST CAUSE OF ACTION

31. Plaintiff incorporates the allegations of paragraphs 1 through 30 above and, in addition, states that Defendants' conduct in repeatedly failing to promote Plaintiff to the position of Associate Professional Scientist and to the position of Professional Scientist and in repeatedly failing to pay Plaintiff in line with other non-Black employees with similar education, experience and demonstrated skill level constitutes willful and illegal discrimination on account of Plaintiff's race, national ancestry and origin in violation of Title VII, 42 U.S.C. 2000(e) et seq.

## SECOND CAUSE OF ACTION

32. Plaintiff incorporates the allegations of paragraphs 1 through 31 above and, in addition, states that Defendants' conduct constitutes willful and illegal discrimination on account of and in retaliation for Plaintiff filing a grievance and a complaint of race, national origin, and national ancestry discrimination in violation of Title VII, 42 U.S.C. 2000(e) et seq.

WHEREFORE Plaintiff JERRY BROWN respectfully requests and prays that this Court enter judgment in favor of the Plaintiff and against Defendants for the following relief:

1. that the court find and declare that the Defendants engaged in race, national ancestry, and national origin discrimination against the Plaintiff in denying his promotion to Associate Professional Scientist and in denying his promotion to Professional Scientist;

2. that the court find and declare that the Defendants engaged in wrongful and illegal retaliation against the Plaintiff for exercising his lawful right to complain of discrimination against the Defendants by filing a charge of race, national origin and national ancestry discrimination with the IDHR and EEOC; and by filing a Complaint At Law against the Defendants with the U.S. District Court;

3. that the court order the Defendants to promote the Plaintiff to the position of Professional Scientist, which position he would have obtained had he not been the victim of race, national origin and national ancestry discrimination;

- 6 -

EXHIBIT A

EEOC Form 5 (5/01)

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 210-2005-00318 |

**Illinois Department Of Human Rights** and EEOC

State or local Agency, if any

| Name (Indicate Mr., Ms., Mrs.) | Home Phone No. (incl Area Code) | Date of Birth |
|---|---|---|
| Mr. Jerry C. Brown | (708) 544-2994 | |

Street Address — City, State and ZIP Code

1520 Lee Blvd. Berkeley, IL 60163

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| IL WASTE MANAGEMENT & RESEARCH | 500 or More | (630) 472-5016 |

Street Address — City, State and ZIP Code

1010 Jorie Blvd. Suite 12, Oak Brook, IL 60523

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

Street Address — City, State and ZIP Code

**DISCRIMINATION BASED ON** (Check appropriate box(es).)

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER (Specify below.)

**DATE(S) DISCRIMINATION TOOK PLACE**

Earliest: 12-19-2003  Latest: 09-28-2004

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I began my employment with the Respondent in or around November 1994. My most recent position is Manufacturing Process Engineer. In or around September 2004, I was informed that I would not receive a promotion to the position of Associate Professional Scientist nor to the position of Professional Scientist. In or around 2002, I filed a lawsuit against the Respondent claiming racial discrimination and retaliation. Since filing the law suit, I have failed to be promoted and have only received a minimal salary increase.

I believe that I have been discriminated against on the basis of my race, Black, and on the basis of retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended.

> RECEIVED EEOC
>
> OCT 15 2004
>
> CHICAGO DISTRICT OFFICE

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

Oct 15, 2004 — Date

*Jerry C. Brown* — Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)

EXHIBIT B

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974: See Privacy act statement before completing this form.

06W0406.11

| AGENCY | CHARGE NUMBER |
|---|---|
| ☒ IDHR | 2006CF2612 |
| ☐ EEOC | |

## Illinois Department of Human Rights and EEOC

| NAME (indicate Mr. Ms. Mrs.) | HOME TELEPHONE (include area code) |
|---|---|
| Jerry C. Brown | (708) 544-2994 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 1520 Lee Blvd | Berkeley, IL 60163 | |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (IF MORE THAN ONE LIST BELOW)

| NAME | NUMBER OF EMPLOYEES, MEMBERS 15+ | TELEPHONE (include area code) |
|---|---|---|
| State of Illinois - Department of Natural Resources Waste Management and Research Center | | (217) 333-8940 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| One Hazelwood Drive | Champaign, IL 61820 | Champaign |

| CAUSE OF DISCRIMINATION BASED ON: | DATE OF DISCRIMINATION EARLIEST (ADEA/EPA) LATEST (ALL) 4/6/06 |
|---|---|
| RACE   RETALIATION | x CONTINUING ACTION |

THE PARTICULARS ARE (if additional space is needed attach extra sheets)

I.  A.  **ISSUE/BASIS**
    UNEQUAL WAGES – OCTOBER 8, 2005 AND CONTINUING UNTIL THE PRESENT, APRIL 6, 2006/DUE TO RACE, BLACK

   B.  **PRIMA FACIE ALLEGATIONS**
   1.  My race is black.

   2.  My performance as manufacturing process engineer has been satisfactory. I began my employment with Respondent in November, 1994.

   3.  Since at least October 8, 2005, and continuing until the present, April 6, 2006, I have been paid lower wages than those paid to other employees whose duties require the same skill and effort as the duties I perform despite my having more advanced degrees and more engineering experience than them.

Continued...lgv

| I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | SUBSCRIBED AND SWORN TO BEFORE ME ON THIS |
|---|---|
| | _Jacquelyn Turner Hamb_ 4/6/06 |
| | NOTARY SIGNATURE    MONTH DATE-YEAR |

| "OFFICIAL SEAL" JACQUELYN TURNER HAMB Notary Public, State of Illinois My Commission Expires 9/21/09 NOTARY SEAL | X _Jerry C. Brown_ 4-6-06 |
|---|---|
| | SIGNATURE OF COMPLAINANT    DATE |
| | I declare under penalty that the foregoing is true and correct I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief |

FORM 5 (5/05)

EXHIBIT D

Case 1:07-cv-07080    Document 16    Filed 08/08/2008    Page 27 of 28
Case 1:07-cv-07080    Document 9-3    Filed 06/04/2008    Page 19 of 19
Case 1:07-cv-02808    Document 14    Filed 01/22/2008    Page 1 of 1

Order Form (01/2005)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 07 C 2808 | **DATE** | January 22, 2008 |
| **CASE TITLE** | Jerry C. Brown vs. Illinois Waste Management and Research Center | | |

**DOCKET ENTRY TEXT**

Defendant's Motion to Dismiss Portions of Plaintiff's Complaint [7] is granted. As more fully explained in the "Statement" section of this Order, plaintiff is ordered to file a First Amended Complaint by February 15, 2008 that complies with this order. Defendant Illinois Department of Natural Resources is to file its Answer by February 29, 2008. The case is set for report on status at 9:00 a.m. on March 6, 2008. Plaintiff and defense counsel are requested to attend the status report.

■[ For further details see text below.]                                              Docketing to mail notices.

### STATEMENT

The proper defendant in this case is the Illinois Department of Natural Resources and should be so denominate in plaintiff's First Amended Complaint that is to be filed on or before February 15, 2008.

The plaintiff's First Amended Complaint may allege, if plaintiff desires, discrimination on the basis of "Race," "National Origin" and "Retaliation," the items circled by plaintiff on his EEOC "Charge Questionnaire" dated January 30, 2007.

The pay differential that the plaintiff may potentially recover based on his EEOC allegations are those pay amounts which he allegedly was denied as a result of his allegedly being denied the promotions, if any, that he proves were a result of illegally discriminatory conduct by defendant within 300 days prior to January 30, 2007, the date plaintiff filed his EEOC charge. The court has calculated that date to be approximately April 1, 2006. Therefore, the First Amended Complaint may not seek damages for conduct that occurred prior to April 1, 2006 but may seek recovery of damages for defendant's "repeatedly failing to pay plaintiff in line with other non-Black employees" after April 1, 2006 as that is allegedly a fair and reasonable inference from the facts alleged by plaintiff to the EEOC.

Those allegedly deficient pay amounts must proven to be tied to the promotions plaintiff was denied because of his race or national origin or as a result of any retaliation against plaintiff by defendant for plaintiff asserting his rights.

| | Courtroom Deputy Initials: | AMM |
|---|---|---|

**EXHIBIT**

G

Mot/Dism.07-7080

07C2808 Jerry C. Brown vs. Illinois Waste Management and Research Center                              Page 1 of 1

EXHIBIT E

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| ☐ FEPA  ☒ EEOC | 440-2008-03551 |

and EEOC

State or local Agency, if any

| NAME(Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Mr Jerry C Brown | 708-544-2994 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 1520 Lee Blvd | Berkeley, IL 60163 | 02-16-1953 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME Illinois Dept of Natural Resources (WMRC) | NUMBER OF EMPLOYEES, MEMBERS 500+ | TELEPHONE (Include Area Code) 217-333-8940 |
|---|---|---|

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| One E. Hazelwood | Champaign, IL 61820 | Champaign |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

☒ RACE   ☐ COLOR   ☐ SEX   ☒ RELIGION   ☒ AGE
☒ RETALIATION   ☒ NATIONAL ORIGIN   ☐ DISABILITY   ☒ OTHER (Specify) Ancestry/Ethnicity

| DATE DISCRIMINATION TOOK PLACE |
|---|
| EARLIEST (ADEA/EPA)    LATEST (ALL) |
| May 10, 2007 |
| ☒ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheets)):

See attached documentation.

1) Intake form
2) Charging Party Statement of Jerry C Brown
3) Minutes of BNRC May 17, 2007 meeting
4) Request for Class Action Investigation

RECEIVED EEOC

FEB 29 2008

CHICAGO DISTRICT OFFICE

Page 1 of 2 (Continued)

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their proceedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
|  | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I deicare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| 2-29-08       Jerry C Brown | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) |
| Date       Charging Party (Signature) |  |

EEOC FORM 5 (Test 10/94)

EXHIBIT F